THIGPEN, Judge.
This case involves a petition filed by the Alabama Department of Human Resources (DHR) alleging that K.C., a minor in the temporary legal custody of her paternal grandparents, is a dependent child and in need of a medical procedure which the child’s custodian refused to allow.
K.C. has a congenital condition wherein one leg is shorter than the other. There is evidence in the record that the condition may be corrected by a relatively simple medical procedure while the child is approximately twelve years old. The procedure lasts approximately 30 minutes and can be performed on an outpatient basis. The procedure, which is not life-threatening and not considered an emergency procedure, slows the growth on the “good leg”, thus allowing the shorter leg an opportunity to “catch up” with the longer leg while the child is still growing.
DHR filed a dependency petition alleging that the grandparents were refusing to allow the corrective procedure, which was “strongly recommended.” DHR further alleged in its petition that the procedure is recommended at this time, “in order to avoid the necessity of a substantially more serious and complicated operation to correct this problem when the child is fully grown.” After an ore tenus proceeding, the juvenile court granted DHR’s petition and ordered the medical procedure. The grandparents appeal and the procedure has been stayed pending the appeal.
The dispositive issue is whether a juvenile court has the authority to adjudicate a child dependent and order that a non-life-threatening, non-emergency medical proce *337 dure be performed on the child over the objections of the child’s legal guardians.
The record reveals that K.C.’s biological mother is deceased and the whereabouts of her biological father are unknown. At the time of these proceedings, K.C. was approximately 12 years old and had lived most of her life with her paternal grandparents, who have custody of her. There is evidence in the record that K.C. attends public school and actively participates in many “normal” activities for a child her age, such as running and playing basketball and volleyball.
Dr. T.R. Dempsey, an orthopedic specialist with the Crippled Children’s Clinic, testified by deposition that K.C. was born with a short leg and that the clinic had been following her progress since 1979. He recommended an outpatient procedure to treat the condition, thereby arresting the growth of the longer leg. He testified that if the procedure is appropriately timed, “the short leg will have enough time to catch up with the longer leg by the time skeletal maturity is reached.” He testified that in K.C.’s case, this is “the best option” and that K.C. is “an ideal candidate for that procedure.” He testified that other options included wearing a lift, or later in life, more complicated procedures to shorten the longer leg or lengthen the short leg.
The grandmother, who opposes the procedure at this time, testified that K.C. does not presently have any problems with the leg and that she doesn’t “feel that [K.C.] needs this done and especially to mess the better leg up.” Based on the advice of a different doctor of the grandmother’s choosing, as well as the grandmother’s observations of the child’s formative years, the grandmother testified that she opposed disturbing the present situation. On cross-examination, the grandmother responded that she did not like her rights in making decisions regarding the child to be taken away.
The record contains a letter from Dr. Lawrence J. Bowness, an orthopedic surgeon, who examined the child at the grandmother’s request. Dr. Bowness’s examination indicated that the child was active, “walked normally without limping,” and had a full range of motion. He noted slight differences in the measurements in the lengths and circumferences' of the child’s legs. Dr. Bowness did not recommend the surgery to arrest the growth of the left leg.
DHR was allowed to have Dr. Dempsey review and rebut Dr. Bowness’s recommendations. In an affidavit, Dr. Dempsey stated that Dr. Bowness did not use a scano-gram to measure K.C.’s legs and that “only a scanogram could reflect the exact length of the legs.” Therefore, Dr. Dempsey’s continued recommendation was for K.C. to immediately have the surgery because “the timeliness of this procedure is essential to the success of the procedure.”
The grandmother argues that DHR has failed to prove by clear and convincing evidence that K.C. is dependent under Ala. Code 1975, § 12-15-1(10)e., as DHR alleged in its petition. That section provides that a child is dependent “whose ... guardian ... neglects or refuses ... to provide or allow medical, surgical or other care necessary for such child’s health or well-being." (Emphasis added.)
We are cognizant of the well-established principle that when the trial court is presented evidence ore tenus, its decision is presumed to be correct and will not be set aside unless it is plainly and palpably wrong. Haag v. Cherokee County Department of Pensions & Security, 489 So.2d 586 (Ala.Civ.App.1986). While that presumption of correctness attaches to the judgment in the instant case, proving dependency under Ala.Code 1975, § 12-15-1(10), requires clear and convincing evidence. See Daniels v. State Department of Human Resources, 530 So.2d 841 (Ala.Civ.App.1988); Haag, supra. In the instant case, the record is replete with evidence that the grandparents, who have loved and cared for the child most of her life, were not refusing necessary medical treatment for the child. It is significant that they had carefully followed the child’s progress in this regard for a number of years and were simply choosing to forgo the option of having this child undergo *338 surgery on her “good leg” at this time. It is possible that the choice the grandparents have made to refuse this surgery for K.C. now may require more complicated procedures later in the child’s life. Nonetheless, this choice does not endanger the child’s health or well-being to the extent that DHR may intervene and petition the court to compel the recommended medical treatment against the grandparents’ decision.
On appeal, DHR argues that Ala. Code 1975, § 12-15-30(c)(1)b., grants the juvenile court the authority to order treatment for any child “who requires emergency medical treatment in order to preserve his life, prevent permanent physical impairment or deformity or alleviate prolonged agonizing pain.” There is no indication that this argument was made to the trial court and we are not persuaded by the evidence in the record that this is a required emergency treatment for K.C. In fact, the record is replete with evidence that this is only one option available to treat K.C.’s condition. The record is clear that K.C. is not presently impaired or deformed by this condition and that the recommended procedure is not required “to preserve [her] life, prevent permanent physical impairment or deformity, or alleviate prolonged agonizing pain.”
In view of the above, this case is reversed and remanded to the trial court for the entry of an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and RUSSELL, J., concur.