826 So.2d 178 (2002)
Ex parte State of Alabama.
(In re L.B.S. v. L.M.S.; and L.S. and L.S., intervenors).
2000713.
Court of Civil Appeals of Alabama.
January 29, 2002.
*181 J. Coleman Campbell and James E. Long, asst. attys. gen., Department of Human Resources, for petitioner.
Stephen P. Bussman, Fort Payne, for respondent.
THOMPSON, Judge.
L.B.S. (the "mother") and L.M.S. (the "father") were divorced on March 22, 2000. The couple had two children, N.L.S. and N.T.S (the "children"). Under the terms of the divorce judgment, the mother was awarded custody of the children. On June 13, 2000, following the divorce of the mother and the father, the father's parents, L.S. and L.S. (the "grandparents"), filed a motion to intervene and petitioned for visitation rights with the children pursuant to § 30-3-4.1, Ala.Code 1975. The grandparents' motion to intervene was granted on June 15, 2000. The mother then moved to dismiss the grandparents' petition for visitation and to strike the trial court's order allowing the grandparents to intervene. Following a hearing, the trial court denied the mother's motions. The mother filed an answer challenging the constitutionality of § 30-3-4.1, Ala.Code 1975, and served a notice of her constitutional challenge on the attorney general, pursuant to § 6-6-227, Ala.Code 1975. In response, the attorney general, acting on behalf of the State of Alabama (hereinafter the "State"), submitted a brief in support of the constitutionality of the statute.
On March 15, 2001, the trial court entered a judgment declaring § 30-3-4.1, Ala.Code 1975, facially unconstitutional and denying the grandparents' petition for visitation. In its judgment, the trial court, relying primarily on the recent United States Supreme Court case of Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), determined that § 30-3-4.1(e), Ala.Code 1975 (that part of the statute establishing a rebuttable presumption in favor of grandparent visitation), and § 30-3-4.1(d) (listing the factors for determining grandparent visitation), were unconstitutional because, it reasoned, those provisions failed to afford special weight to a parent's own determination regarding visitation. According to the trial court, without those two provisions, the remainder of § 30-3-4.1, Ala.Code 1975, failed to provide any standard upon which a court could rely in determining when and under what circumstances to award visitation. Therefore, the trial court concluded that the entire statute was unconstitutional on its face. Only the State appealed.
The United States Supreme Court, in Troxel v. Granville, stated that, with regard to child-visitation rights, parents have a fundamental right "to make decisions concerning the care, custody, and control" of their children, and that such a right is protected by the Due Process Clause of the United States Constitution. Troxel v. Granville, 530 U.S. at 75, 120 S.Ct. 2054. *182 Troxel involved a Washington statute that permitted "any person" to file at "any time" a petition for visitation rights; the statute allowed the court to grant the petition whenever that visitation might serve the best interest of the child. Troxel, 530 U.S. at 60, 120 S.Ct. 2054. The petitioners in Troxel were the paternal grandparents of two illegitimate children. They filed a petition seeking visitation rights with the children; the mother opposed the petition.[1]Troxel, 530 U.S. at 60, 120 S.Ct. 2054. The trial court granted visitation to the grandparents; the mother appealed. The Washington Supreme Court held that although the grandparents did have standing to petition for visitation, the statute providing for that visitation unconstitutionally infringed on the parents' fundamental right to rear their children. According to the Washington Supreme Court, the United States Constitution prohibits the State from interfering with a parent's fundamental right to parent, absent some harm or potential harm to the child. In addition, the court held that the Washington grandparent-visitation statute was overly broad. In re Custody of Smith, 137 Wash.2d 1, 969 P.2d 21 (1998).[2]
In affirming the Washington Supreme Court's judgment, the United States Supreme Court held that, as applied, Washington's grandparent-visitation statute violated the mother's due process "right to make decisions concerning the care, custody, and control of her two daughters" Troxel, 530 U.S. at 72, 120 S.Ct. 2054. According to the Supreme Court, Washington's statute was "breathtakingly broad" in that it allowed "any person" to petition at "any time" for visitation rights. Troxel, 530 U.S. at 67, 120 S.Ct. 2054. In reaching its conclusion, the Court held that the presumption created by the Washington statute in favor of grandparent visitation over a contrary decision by a parent was unconstitutional. According to the Court, "[t]he decisional framework employed by the [Washington trial court] directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." Troxel, 530 U.S. at 69, 120 S.Ct. 2054. In addition, the Court stated that, in effect, the statute allowed a judge, basing a decision on a child's "best interest," to "overturn any decision by a fit custodial parent concerning visitation...." Troxel, 530 U.S. at 67, 120 S.Ct. 2054. According to the Supreme Court, the Washington trial court's "order was not founded on any special factors that might justify the State's interference with [the parent's] fundamental right to make decisions concerning the rearing of her two daughters." Troxel, 530 U.S. at 68, 120 S.Ct. 2054. The Court noted that "[t]he Washington Supreme Court had the opportunity to give [Washington's grandparent-visitation statute] a narrower reading, but it declined to do so." Troxel, 530 U.S. at 67, 120 S.Ct. 2054.
Alabama's grandparent-visitation statute, § 30-3-4.1, Ala.Code 1975, provides:
"(a) For the purposes of this section, the term `grandparent' means the parent of a parent of a minor child, the parent of a minor child's parent who has died, or the parent of a minor child's parent whose parental rights have been terminated when the child has been adopted *183 pursuant to Section 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent and relative adoption.
"(b) Except as otherwise provided in this section, any grandparent may file an original action for visitation rights to a minor child if it is in the best interest of the minor child and one of the following conditions exist:
"(1) When one or both parents of the child are deceased.
"(2) When the marriage of the parents of the child has been dissolved.
"(3) When a parent of the child has abandoned the minor.
"(4) When the child was born out of wedlock.
"(5) When the child is living with both biological parents, who are still married to each other, whether or not there is a broken relationship between either or both parents of the minor, and the grandparent and either or both parents have used their parental authority to prohibit a relationship between the child and the grandparent.
"(c) Any grandparent may intervene in and seek to obtain visitation rights in any action when any court in this state has before it any question concerning the custody of a minor child, a divorce proceeding of the parents or a parent of the minor child, or a termination of the parental rights proceeding of either parent of the minor child, provided the termination of parental rights is for the purpose of adoption pursuant to Sections 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent or relative adoption.
"(d) Upon the filing of an original action or upon intervention in an existing proceeding pursuant to subsections (b) and (c), the court shall grant any grandparent of the child reasonable visitation rights if the court finds that the best interests of the child would be served by the visitation. In determining the best interest of the child, the court shall consider the following:
"(1) The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents.
"(2) The preference of the child, if the child is determined to be of sufficient maturity to express a preference.
"(3) The mental and physical health of the child.
"(4) The mental and physical health of the grandparent or grandparents.
"(5) Evidence of domestic violence inflicted by one parent upon the other parent or the child. If the court determines that evidence of domestic violence exists, visitation provisions shall be made in a manner protecting the child or children, parents, or grandparents from further abuse.
"(6) Other relevant factors in the particular circumstances.
"(e) The court shall make specific written findings of fact in support of its rulings. There shall be a rebuttable presumption in favor of visitation by any grandparent. An original action requesting visitation rights shall not be filed by any grandparent more than once during any two-year period and shall not be filed during any year in which another custody action has been filed concerning the child. After visitation rights have been granted to any grandparent, the legal custodian, guardian, or parent of the child may petition the court for revocation or amendment of the visitation rights, for good cause shown, which the court, in its discretion, may grant or deny. Unless evidence of abuse is alleged or other exceptional circumstances *184 a petition shall not be filed more than once in any two-year period.
"(f) If the court finds that the grandparent or grandparents can bear the cost without unreasonable financial hardship, the court, at the sole expense of the petitioning grandparent or grandparents, may appoint a guardian ad litem for the minor child."
(Emphasis added.)
This court, in accordance with the United States Supreme Court's decision in Troxel, has recognized that parents have a fundamental right to make decisions concerning the "`care, custody, and control of their children.'" R.S.C. v. J.B.C., 812 So.2d 361, 366 (Ala.Civ.App. 2001) (quoting Troxel v. Granville, 530 U.S. at 65, 120 S.Ct. 2054). Because the determination of child-visitation rights directly interferes with the parents' fundamental right to rear their children, a strict-scrutiny analysis must be applied. R.S.C. v. J.B.C., 812 So.2d 361 (Ala.Civ. App.2001). To survive a strict-scrutiny analysis, the statute must be narrowly tailored to serve a compelling state interest. See Smith v. Schulte, 671 So.2d 1334 (Ala. 1995), cert. denied, 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950, abrogated on other grounds, Ex parte Apicella, 809 So.2d 865 (Ala.2001); see also G.G. v. R.S.G., 668 So.2d 828 (Ala.Civ.App.1995).
The State has a compelling interest in fostering the grandparent-grandchild relationship. Although parents have a fundamental right to make decisions concerning their children, this right is not absolute. According to the United States Supreme Court, "the state has a wide range of power for limiting parental freedom and authority in things affecting [a] child's welfare...." Prince v. Massachusetts, 321 U.S. 158, 167, 64 S.Ct. 438, 88 L.Ed. 645 (1944). Under the authority of its police power or its parens patriae power, the state has the ability, under certain circumstances, to interfere with the family's autonomy. "Acting to guard the general interest in [a] youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways." Prince, 321 U.S. at 166, 64 S.Ct. 438 (footnotes omitted). Examples of permissible interference with parental control include requiring child-passenger restraints for children under the age of six (§ 32-5-222, Ala.Code 1975); requiring children to wear bicycle helmets while riding a bicycle (§ 32-5A-285, Ala.Code 1975); the courts' ability to determine custody in divorce hearings (§§ 30-3-1 through -44, Ala.Code 1975); the courts' ability to determine custody of children of parents who committed domestic or family violence (§ 30-3-135, Ala.Code 1975); and the courts' ability to terminate parental rights (§ 26-18-7, Ala. Code 1975). Fostering the grandparent-grandchild relationship may generally promote the health and stability of a child, and this court can easily envision circumstances in which this relationship should be strongly encouraged.
Although the State has a compelling interest in encouraging the grandparent-grandchild relationship, according to the United States Supreme Court in Troxel, the determination that grandparent visitation will serve the best interest of the child is not alone sufficient to overcome the presumption in favor of a fit parent's fundamental right to rear his or her children. Troxel, 530 U.S. at 67, 120 S.Ct. 2054.
In reviewing § 30-3-4.1, Ala. Code 1975, Alabama's grandparent-visitation statute, we note that "it is appropriate to reiterate the fundamental proposition that validly enacted legislation is presumed *185 to be constitutional," and that this court "will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations." State Bd. of Health v. Greater Birmingham Ass'n of Home Builders, Inc., 384 So.2d 1058, 1061 (Ala.1980). "[T]he judiciary's duty is to `adopt the construction which would uphold' a statute rather than strike it down." House v. Cullman County, 593 So.2d 69, 79 (Ala. 1992) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). Our supreme court has recognized that "[a] statute may be enacted without containing [a] provision for constitutional requirements but in such terms as not to exclude them and to justify the court in holding that it was intended to be subject to those requirements, which should then be treated as a feature of it." Almon v. Morgan County, 245 Ala. 241, 246, 16 So.2d 511, 516 (1944). The party challenging the constitutionality of a statute bears the burden of overcoming the presumption of constitutionality in favor of the statute. City of Hoover v. Rocky Ridge Fire Dist., 460 So.2d 192 (Ala.Civ. App.1984).
The trial court in the present case determined that Alabama's grandparent-visitation statute, § 30-3-4.1, Ala.Code 1975, was facially unconstitutional. Where the appeal concerns only questions of law, "there is no presumption of correctness in favor of the trial court's judgment; this court's review of legal issues is de novo." Morgan Bldg. & Spas, Inc. v. Gillett, 762 So.2d 366, 368 (Ala.Civ.App. 2000). In addition, "[w]hen an appellate court interprets a statute or considers the constitutionality of a statutory provision, no presumption of correctness attaches to the trial court's interpretation of the statute." Monroe v. Valhalla Cemetery Co., 749 So.2d 470, 471-72 (Ala.Civ.App.1999). The only issue before the court on appeal is whether the trial court erred in determining that § 30-3-4.1, Ala.Code 1975, is facially unconstitutional.
This court recently addressed the constitutionality of § 30-3-4.1, Alabama's grandparent-visitation statute, in R.S.C. v. J.B.C.[3] That case involved a paternal grandfather's petition for visitation under § 30-3-4.1, Ala.Code 1975, with his two minor grandchildren; the grandchildren's parents were still married. The trial court granted the grandfather visitation. This court reversed its judgment. R.S.C. v. J.B.C., 812 So.2d at 372. In reversing the judgment of the trial court, a majority of this court determined that the rebuttable presumption in favor of grandparent visitation set forth in § 30-3-4.1(e), Ala.Code 1975, was invalid.[4]R.S.C. v. *186 J.B.C., supra. In reaching that determination, the main opinion, citing Troxel, supra, stated that the rebuttable presumption in favor of grandparent visitation was unconstitutional because that presumption opposed the "`traditional presumption that a fit parent will act in the best interests of his or her child.'" R.S.C. v. J.B.C., 812 So.2d at 371 (quoting Troxel, 530 U.S. at 69, 120 S.Ct. 2054). As to this issue, the trial court was correct in finding the presumption in favor of visitation to be unconstitutional on its face.
In enacting the grandparent-visitation statute, the Alabama Legislature provided that the provisions of § 30-3-4.1, Ala.Code, 1975, were severable. Act No. 99-436, Ala. Acts 1999. A severability clause allows the courts to uphold the remaining portions of a statute that were not declared unconstitutional when "the remaining portions of [the statute] are complete within themselves, sensible and capable of execution." Mitchell v. Mobile County, 294 Ala. 130, 134, 313 So.2d 172, 174 (1975). In addition, the Alabama Code contains the following severability provision:
"If any provision of this Code ... is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable."
§ 1-1-16, Ala.Code 1975.
The trial court also found that the stated factors in § 30-3-4.1(d), Ala. Code 1975, failed to afford special weight to the parents' own determination regarding visitation of the child with the grandparent. The four members of the plurality in Troxel, agreeing with Justice Kennedy who dissented, stated that the "constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied." Troxel, 530 U.S. at 73, 120 S.Ct. 2054. Section 30-3-4.1(d), Ala.Code 1975, sets forth a number of factors for the court to consider in determining whether to award visitation to the petitioning grandparents. Most significantly, § 30-3-4.1(d)(6) provides for the consideration of "[o]ther relevant factors in the particular circumstances." Although the factors listed in § 30-3-4.1(d) do not specifically mention the consideration of a parent's own determination with respect to the child, the factors also do not specifically exclude that factor as a consideration. We conclude that the requirement that the court consider "other relevant factors" under § 30-3-4.1(d) allows the courts to give great weight, as it must, to a parent's decision regarding such visitation in determining whether to grant a grandparent visitation. See State Bd. of Health v. Greater Birmingham Ass'n of Home Builders, Inc., supra. This presumption in favor of a fit parent's decision regarding grandparent visitation will place a heightened burden of proof on the grandparent petitioning for visitation. Because the fundamental right of a parent is at issue, a grandparent seeking visitation bears the burden of showing, by clear and convincing evidence, that the best interest of the child is served by awarding grandparent visitation. We note that harm or detriment is always a factor to be considered in a best-interest analysis.[5] We conclude that the *187 language of § 30-3-4.1(d) allows the trial court, on a case-by-case basis, to constitutionally apply Alabama's grandparent-visitation statute within the limitations expressed in this opinion.
Although a majority of this court has previously determined the rebuttable presumption in favor of grandparent visitation contained in § 30-3-4.1, Ala.Code 1975, to be unconstitutional, see R.S.C. v. J.B.C., supra, we now conclude that the remainder of the statute is enforceable because it provides a standardthe factors listed in § 30-3-4.1(d)upon which the court may rely in determining when and under what circumstances to award visitation. In addition, the requirement that the courts consider "other relevant factors" under § 30-3-4.1(d)(6), Ala.Code 1975, allows the courts to construe Alabama's grandparent-visitation statute so as to encompass necessary constitutional requirements. We conclude that § 30-3-4.1, Ala.Code 1975, may be given a field of operation, albeit a narrow one, within constitutionally imposed limitations. Therefore, we hold that the trial court erred in finding § 30-3-4.1, Ala.Code 1975, to be facially unconstitutional.
REVERSED.
PITTMAN, J., concurs.
YATES, P.J., and MURDOCK, J., concur in the judgment of reversal only.
CRAWLEY, J., dissents.
YATES, Presiding Judge, concurring in the judgment of reversal only.
I agree with the reasoning in Judge Murdock's special writing. I write specially to note that Judge Thompson agrees that § 30-3-4.1, Ala.Code 1975, may constitutionally be applied within the boundaries upon which Judge Murdock and I agree, although Judge Thompson (joined by Judge Pittman) would go further and uphold the application of the statute in a somewhat broader class of cases. Therefore, a majority of this court agrees: (1) that parents have a fundamental right to make decisions regarding the care, custody, and control of their children and because a determination of grandparent-visitation rights directly interferes with a parent's fundamental right to rear his or her children, a strict-scrutiny analysis applies to such an infringement upon a fundamental right; (2) that there is a presumption that a fit parent acts in the best interest of his or her child and that this presumption places on the grandparent petitioning for visitation the burden of showing by clear and convincing evidence that the best interest of the child is served by awarding visitation if substantial harm to the child by not awarding visitation is shown; and (3) that this court should not invalidate the grandparent-visitation statute on constitutional grounds if by reasonable construction, it can be given a field of operation within constitutionally imposed limitations. However, because Judge Crawley is of the view that the statute may not be constitutionally applied to any cases, the effect of this court's decision will be to bar application of the statute to any class of cases beyond those described in Judge Murdock's writing, as to which a majority of this court agrees.
MURDOCK, Judge, concurring in the judgment of reversal only.
I concur in the reversal of the trial court's judgment holding Ala.Code 1975, § 30-3-4.1, unconstitutional per se. In *188 other words, I agree that there is a class of cases to which the statute constitutionally may be applied. In my opinion, however, the class of cases to which the statute may be applied without violating the constitution is more limited than, and falls within, the class of cases as to which Judge Thompson would apply the statute. That is, given my view of applicable constitutional restrictions, I would uphold the constitutionality of the statute only with respect to a "subset" of the cases as to which Judge Thompson would do so.
In general, to fall within the more limited class of cases to which I believe the statute constitutionally may be applied, there must be a threshold showing of substantial harm to the child if the requested visitation is not granted, and this showing must be made by clear and convincing evidence. Judge Thompson would not limit the application of the statute to only those cases where harm, substantial or otherwise, is present, but would instead allow harm, if present, to be considered as a "factor" in determining a child's "best interests."
In J.S. v. D.W., [Ms. 2990431, May 4, 2001] ___ So.2d ___ (Ala.Civ.App.2001), and R.S.C. v. J.B.C., 812 So.2d 361 (Ala. Civ.App.2001), this court recognized that a fit custodial parent's right to make decisions regarding his or her child's visitation with a grandparent is a fundamental liberty interest entitled to strict scrutiny under the Fourteenth Amendment. We also held that something more than proof by the grandparents that visitation was in "the best interest of the child" was required in order to overcome the parent's fundamental liberty interest in making decisions regarding the care, custody, and control of their children.
When a fundamental right is pitted against a right that is not fundamental, state interference with the fundamental right is justified only if the state can show that it has a compelling interest and that such interference is narrowly tailored to the protection of the compelling state interest involved. See Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The state argues that the "best interest" of a child is a "compelling state interest." We implicitly rejected this proposition in J.S. and expressly rejected it in R.S.C. In R.S.C., we explained that to hold that the state has a compelling interest in deciding the best interest of a child, absent harm to that child, would enable the state to override any parental decision, as to any matter, at any time. R.S.C., 812 So.2d at 365 n. 1 and accompanying text. Such a holding would logically lead to the conclusion that the State could even break up stable families whose children are leading satisfactory lives and redistribute the children in order to place each child with the "best family." As the Supreme Court of Washington has noted, "it is not within the province of the state to make significant decisions concerning the custody of children merely because it believes it can make a `better' decision" than a fit custodial parent. In re Custody of Smith, 137 Wash.2d 1, 969 P.2d 21 (1998). In affirming the Washington Supreme Court's decision in In re Custody of Smith, the United States Supreme Court explained that the problem with the Washington statute at issue in that case was that it allowed "a court [to] disregard and overturn any decision by a fit custodial parent concerning visitation ... based solely on the judge's determination of the child's best interests." Troxel v. Granville, 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). See Griggs v. Barnes, 262 Ala. 357, 364, 78 So.2d 910, 916 (1955) ("[T]he courts of this state do not have the power to sever the bonds of blood relationship *189 merely in order to gain some real or fancied advantage for a minor child."); In re Guardianship of Smith, 255 P.2d 761, 762 (Cal.1953), superseded on other grounds on rehearing, 42 Cal.2d 91, 265 P.2d 888 (1954).
In Williams v. Williams, 256 Va. 19, 21, 501 S.E.2d 417, 418 (1998), the Virginia Supreme Court construed Virginia's grandparent-visitation statute to require a showing of harm despite the absence of an express requirement for such a showing. The court reasoned that "to constitute a compelling interest, `state interference with a parent's right to raise his or her child must be for the purpose of protecting the child's health or welfare.'" (Citation omitted.) The Williams court quoted with approval the decision of Virginia's Court of Appeal:
"For the constitutional requirement to be satisfied, before visitation can be ordered over the objection of the child's parents, a court must find an actual harm to the child's health or welfare without such visitation."
Williams, 256 Va. at 22, 501 S.E.2d at 418 (citation omitted). See also Brooks v. Parkerson, 265 Ga. 189, 194, 454 S.E.2d 769, 773 (1995) (holding a grandparent-visitation statute unconstitutional because it did not contain a provision that the state may impose grandparent visitation over the parents' objections only on a showing that failing to do so would be harmful to the child); Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla.1996) (acknowledging the argument that harm or detriment is always an element of a best-interests analysis, but electing to hold Florida's grandparent-visitation statute unconstitutional because of the absence of an explicit requirement of harm). See also In re Marriage of Harris, 112 Cal.Rptr.2d 127, 135, 142 (2001) (California's Constitution requires "grandparent seeking visitation rights over the objection of a fit parent to show by clear and convincing evidence that the parent's decision would be detrimental to the child")(opinion superseded pending review by California Supreme Court, 115 Cal. Rptr.2d 191, 37 P.3d 379 (2002)); In re Herbst, 971 P.2d 395 (Okla.1998) (pre-Troxel holding that, although Oklahoma statute by its terms permitted a court to grant grandparent visitation merely if the court found it to be "in the best interest of the child," the statute may not be constitutionally applied under the United States and Oklahoma Constitutions where there is no threshold showing of harm) (applied as to Oklahoma Constitution in post-Troxel decision in Neal v. Lee, 14 P.3d 547, 549-50 (Okla.2000)); Hawk v. Hawk, 855 S.W.2d 573, 577 (Tenn.1993) (when no "substantial harm" threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right under the Tennessee Constitution of parents to raise their children as they see fit).
Although the United States Supreme Court in Troxel v. Granville did not reach the issue whether the Washington grandparent-visitation statute was unconstitutional for failing to require a showing of harm (see 530 U.S. at 73, 120 S.Ct. 2054), the Supreme Court of Washington addressed the issue in the same case, offering the following analysis:
"In answering whether the state visitation statutes at issue serve a compelling state interest we must understand the sources of state power to intrude on family life. The state may act pursuant to its authority to protect citizens from injuries inflicted by third persons or to protect its citizens from threats to health and safety. Thus, in the context of family life, the state's police power gives it the authority to require the vaccination of children against communicable *190 diseases over the objection of their fit parents. See Prince [v. Massachusetts], 321 U.S. [158,] 166-67, 64 S.Ct. 438, 88 L.Ed. 645 [ (1944) ]. Similarly, the state may step in and override a decision of a parent where the decision would harm the child. In Prince v. Massachusetts, for example, the Supreme Court refused to invalidate legislation which prohibited a parent from permitting a minor to sell merchandise on a public street. Prince, 321 U.S. 158, 64 S.Ct. 438.... Although the Court acknowledged the parent's constitutionally protected right to child-rearing autonomy, it found a narrow exception necessary in light of the `crippling effects of child employment,' `more especially in public places.' Id. at 168, 64 S.Ct. 438. Police power thus empowered the state to intrude on a parental decision in the interests of society as a whole where the decision directly and severely imperiled the child.[[6]]
"The state's other source of authority to intrude on a family's autonomy is its parens patriae power. As parens patriae the state acts from the viewpoint and in the interests of the child. Like the state's police power the state may act only pursuant to its parens patriae power where a child has been harmed or where there is a threat of harm to a child. See [Wisconsin v.] Yoder, 406 U.S. [205,] 206, 92 S.Ct. 1526, 32 L.Ed.2d 15 [ (1972) ]. Both parens patriae power and police power provide the state with the authority to act to protect children lacking the guidance and protection of fit parents of their own, and although they may represent different perspectives, both contemplate harm to the child and, in practical terms, have been used nearly interchangeably in the fashioning of a threshold requirement of parental unfitness, harm, or threatened harm. See Joan C. Bohl, The `Unprecedented Intrusion': A Survey and Analysis of Selected Grandparent Visitation Cases, 49 Okla. L.Rev. 29 (1996)."
In re Custody of Smith, 137 Wash.2d at 15-16, 969 P.2d at 28.
Alabama domestic law is consistent with a requirement that there be a showing of substantial harm as a prerequisite to state interference with a parent's right to the custody and control of his or her child. Under both our caselaw and our statutes, the required showing may come in the form of proof that the parent is unfit or has voluntarily forfeited custodyeither circumstance being one that implicates harm or potential harm to the child or to society[7]or some other serious harm that *191 would occur in the absence of state intervention. See, e.g., Ex parte Terry, 494 So.2d 628 (Ala.1986); Ex parte Sullivan, 407 So.2d 559, 563 (Ala.1981) ("So strong is the presumption that `the care which is prompted by the parental instinct, and responded to by filial affection, is most valuable of all' ...that the parental authority will not be interfered with, except in case of gross misconduct or where, from some other cause, the parent wants either the capacity or the means for the proper nurture and training of the child."); R.C. v. State Dep't of Human Resources, 587 So.2d 335 (Ala.Civ.App.1991) (where the choice does not endanger the child's health or well-being, the Department of Human Resources may not intervene and petition the court to compel medical treatment against the custodian's decision); Ala.Code 1975, § 26-18-7 ("1984 Child Protection Act"); Ala.Code 1975, § 12-15-1(10) (setting forth definition of a dependent child).
I am acutely aware that, in many cases, where a child has enjoyed a substantial relationship with a grandparent, arbitrarily depriving the child of the relationship could cause the child serious psychological or emotional harm.[8] In In re Custody of *192 Smith, the Washington Supreme Court also recognized that arbitrarily depriving a child of a substantial relationship with a third person could cause "severe psychological harm." 137 Wash.2d at 20, 969 P.2d at 30. See also Troxel, 530 U.S. at 99, 120 S.Ct. 2054 (Kennedy, J., dissenting). No showing of harm was required by the Washington statute at issue, however, and the court cited Washington state law for the proposition that "a state can only intrude upon a family's integrity pursuant to its parens patriae right when `parental actions or decisions seriously conflict with the physical or mental health of the child.'" 137 Wash.2d at 18, 969 P.2d at 29 (citation omitted; emphasis added). See also Parham v. J.R., 442 U.S. 584, 603, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); Wisconsin v. Yoder, 406 U.S. 205, 230, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).
Parents often are called upon to decide between competing alternatives, each of which may entail both benefits and detriments for their children. I conclude that a court may not constitutionally substitute its decision for that of a fit custodial parent as to what, if any, grandparent visitation is in a child's overall best interest, unless the net effect of the court's substituting its decision for that of the parent's will be to prevent substantial harm to the child.
I also note that Ala.Code 1975, § 30-3-4.1, allows a court to override the decision of a parent and order what the court may deem to be "reasonable" visitation. The statute does not expressly state that the court may order only visitation narrowly tailored to address an adjudged harm. Yet, as noted previously, the interference with a fundamental right for the purpose of serving a compelling state interest must be done in a manner that is least restrictive of the fundamental right and most closely tailored to serve that compelling state interest. See Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); Beagle v. Beagle, 678 So.2d at 1275 (recognizing in the context of a challenge to Florida's grandparent-visitation statute that the statute must meet a compelling state interest "through the use of the least intrusive means"). Limiting a court's interference with parental authority to the extent necessary, or reasonably necessary, to prevent or alleviate the adjudged harm would result in less interference with parental authority. Compliance with such a requirement conceivably could entail adjustments to the number or duration of visits, limitations on the nature of the visitation (e.g., a restriction of visitation to supervised visits only), and/or to other conditions or restrictions.[9]
*193 The issue that the Troxel court did address, at least in general terms, was the need for an appropriate measure of deference to a parent's judgment as to visitation. The traditional presumption that a fit custodial parent will act in the best interest of his or her child is a strong one. In R.S.C., not only did we strike down the statute's presumption in favor of grandparent visitation in § 30-3-4.1(e), we further held that, even if the burden of proof were placed on the grandparents, that placement would not amount to sufficient deference to the parent's fundamental right to make decisions regarding his or her child. We quoted from Troxel as follows:
"`The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests.'...
". . . .
"The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child."
R.S.C., 812 So.2d at 370-71 (quoting Troxel, 530 U.S. at 69, 120 S.Ct. 2054). Both J.S. and R.S.C. stand for the proposition that the state should not be able to substitute its decision concerning a child's visitation with his or her grandparents merely because the state thinks it can make a better decision than the child's fit custodial parents. As the Troxel court explained:
"[T]here is a presumption that fit parents act in the best interests of their children. As [the Supreme Court] explained in Parham:

"`... historically, it has recognized that natural bonds of affection lead parents to act in the best interests of their children.'"
Troxel, 530 U.S. at 68, 120 S.Ct. 2054 (quoting Parham, 442 U.S. at 602, 99 S.Ct. 2493).
The problem with the Washington statute, therefore, was that it provided "no special weight at all to [the parent's] determination of her daughters' best interests." Troxel, 530 U.S. at 69, 120 S.Ct. 2054. "And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." Troxel, 530 U.S. at 70, 120 S.Ct. 2054. Accordingly, I am of the view that, in order for a trial court to override a fit custodial parent's decision regarding his or her child's visitation, that court must be persuaded by clear and convincing evidence that it should do so. Such a standard would be consistent with established caselaw and statutory authority pertaining to interference with parental authority. See, e.g., Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (due process requires clear and convincing evidence to terminate parental rights); Ex parte Berryhill, 410 So.2d 416, 417 (Ala.1982) ("the superior claim of the parent ought not ... to be disturbed, unless it plainly appears that the interests of the child require it to be set aside"; reversing lower court on ground that there was not "clear and convincing evidence" that the natural father was unfit for custody of his child) (emphasis added); Daniels v. State Dep't of Human Resources, 530 So.2d 841 (Ala.Civ.App.1988) (termination of parental rights requires finding of dependency by clear and convincing evidence); Ala.Code 1975, § 12-15-65(f) ("If the court finds from clear and convincing evidence, competent, material, and relevant *194 in nature that the child is dependent... the court ... [may] make proper disposition of the case." (emphasis added)); Ala.Code 1975, § 26-18-7 (requiring "clear and convincing evidence" for termination of parental rights); Ala.Code 1975, § 26-10A-25(b)(2) (requiring "clear and convincing evidence" of consent or relinquishment by natural parent as a prerequisite to adoption). See also In re Marriage of Harris, 112 Cal.Rptr.2d 127, 135, 142 (2001) (construing statutory presumption in favor of the parent's decision to require proof by clear and convincing evidence) (opinion superseded pending review by California Supreme Court, 115 Cal.Rptr.2d 191, 37 P.3d 379 (2002)); Department of Soc. & Rehab. Servs. v. Paillet, 270 Kan. 646, 16 P.3d 962, 966 (2001) (identifying the core issue in Troxel as whether "the parent's fundamental right to direct her child's upbringing (is) reflected in a presumption that she acts in the child's best interests"); Smolen v. Smolen, 185 Misc.2d 828, 834, 713 N.Y.S.2d 903, 908 (Fam.Ct.2000) (holding that mother's discretion "must be afforded substantial weight as required by Troxel"); In re Tamara R., 136 Md.App. 236, 253-54, 764 A.2d 844, 852-53 (2000) (finding that the best way to meet the requirements of Troxel "is to apply a presumption that the parent's decision to decline visitation is in the best interest of the child over whom the parent has custody"); Cal. Fam.Code § 3103(d) (West 1999) (providing for a "rebuttable presumption affecting the burden of proof that the visitation of a grandparent is not in the best interests of a minor child" if the child's parents do not agree to such visitation); Neb.Rev.Stat. § 43-1802(2) (1998) (court must find by "clear and convincing evidence that there is, or has been, a significant beneficial relationship between the grandparent and ... child, that it [serves] the best interests of the child that such a relationship continue, and that ... visitation will not adversely interfere with the parent-child relationship"); R.I. Gen. Laws § 15-5-24.3(a)(2)(v) (Supp.1999) (grandparent must rebut, by clear and convincing evidence, presumption that parent's decision to refuse grandparent visitation was reasonable); Utah Code Ann. § 30-5-2(2)(e) (1998) (same); Va.Code § 20-124.2(B) (requiring a showing by "clear and convincing evidence" in order to award custody or visitation to any person other than a parent).
In In re Marriage of Harris, 112 Cal. Rptr.2d 127 (Cal.App.2001),[10] the California Court of Appeal considered California's grandparent-visitation statute, which provided for "a rebuttable presumption affecting the burden of proof that the visitation of a grandparent is not in the best interests of a minor child if the parent ... objects to visitation by the grandparent." See Cal. Fam.Code § 3104(f). The California Court of Appeal construed this provision in a manner that saved the statute from a finding of facial unconstitutionality under California's Constitution. Although a similar provision is not found in Alabama's grandparent-visitation statute, the reasoning of the court in In re Marriage of Harris is helpful.
The Harris court begins by explaining that conventional custody cases provided useful guidance with respect to visitation *195 cases "[b]ecause visitation is `a limited form of custody during the time the visitation rights are being exercised ...' ... just as a custody decision that is rendered contrary to the wishes of parents impacts parental authority, `judicially compelled visitation against the wishes of both parents can significantly affect parental authority and the strength of the family unit.'" 112 Cal.Rptr. at 140 (citations omitted). Citing California caselaw analogous to the Alabama Supreme Court's decision in Ex parte Terry, the California appellate court further explained:
"[W]hereas the paramount consideration in a dispute between parents is the best interest of the child, a far different emphasis applies when a parent and a nonparent vie for custody. In such cases, an award cannot be made to the nonparent unless the court finds an award of custody to the parent would be detrimental to the child. A parent, if not found unfit, has a `natural' and paramount right to custody as against a third party."
Id. at 140-41 (citations omitted). The court then explained that, consistent with the state policy of parental preference, before making an order granting custody to a nonparent without the parents' consent, a court must make a two-part finding: "granting custody to a parent would be detrimental to the child; and granting custody to the nonparent is required to serve the child's best interests.... [S]uch findings are required to prevent impermissible intrusions into parent decision-making by fit parents." Id. at 141.
The California appellate court then elaborated further on the quantum of proof necessary in order to intrude into parental decision-making by fit parents:
"`The degree of burden of proof applied in a particular situation is an expression of the degree of confidence society wishes to require of the resolution of a question of fact.... The burden of proof thus serves to allocate the risk of error between the parties, and varies in proportion to the gravity of the consequences of an erroneous resolution....'
". . . .
"Before the state can override a fit parent's child rearing decisions, something more than a preponderance of the evidence is called for. A preponderance of the evidence standard is appropriate when `society has a minimal concern with the outcome' of the litigation, as in a suit for money damages.... But when a constitutional right is at stake, a significant quantum of proof must be required to afford adequate protection of that right. Otherwise, we risk having a court substitute its own views for those of a fit parent. By mandating a grandparent to show by the higher standard of clear and convincing evidence that a fit parent's decision against visitation would be detrimental to the child, we are precluding a court from overriding a parent's child rearing decision merely on the basis of the court's contrary view."
Id. at 141-42. Accordingly, the California Court of Appeal concluded that "[w]hen a fit parent objects to visitation, the grandparent must bear the burden of demonstrating by clear and convincing evidence that the parent's decision regarding visitation would be detrimental to the child." Id. at 141.
Ala.Code 1975, § 30-3-4.1, does not require a showing of substantial harm to a child as a prerequisite to interference with a parent's decision as to with whom his child should associate. Nor does § 30-3-4.1 give deference to the parent's initial decision regarding visitation by requiring that a court must be persuaded by clear and convincing evidence that it should substitute *196 its opinion for that of a child's parents.
Nonetheless, in R.S.C., as in J.S., this court found the grandparent-visitation statute before it to be unconstitutional as applied and stopped short of declaring the statute unconstitutional per se, or facially. In so doing, this court, in effect, reserved judgment on whether § 30-3-4.1 might constitutionally be applied in cases where constitutional standards are met. I now conclude that it may be.[11]
In Almon v. Morgan County, 245 Ala. 241, 246, 16 So.2d 511, 516 (1944), the Alabama Supreme Court stated that "[a] statute may be enacted without containing [a] provision for constitutional requirements but in such terms as not to exclude them and to justify the court in holding that it was intended to be subject to those requirements, which should then be treated as a feature of it." As written, the statute at issue includes a presumption in favor of grandparent visitation that would authorize courts to interfere with parental authority without any threshold showing of harm and without the satisfaction of a heightened burden of proof. In R.S.C., however, we held this presumption unconstitutional. Act No. 99-436, 1999 Ala. Acts, from which § 30-3-4.1 was derived, provides in section 3 thereof that "[t]he provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, that declaration shall not affect the part which remains." Severing the provision for a presumption in favor of grandparent visitation from the remainder of the statute, the question then becomes whether this court is justified in applying the remainder of the statute with those limitations necessary to give the statute a constitutional field of operation.
It is well established that "courts will strive to uphold acts of the legislature." City of Birmingham v. Smith, 507 So.2d 1312, 1315 (Ala.1987). "If a portion of a legislative enactment is determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force." Id. The test is whether the Legislature would have enacted the statute without the offending provision or application. See id. (holding that the test in that case was "whether the legislature would have passed the statute without the [unconstitutional provision]"). Cf. State Board of Health v. Greater Birmingham Assoc. of Home Builders, Inc., 384 So.2d 1058, 1061 (Ala.1980) (court will not invalidate a statute on constitutional grounds "if by reasonable construction it can be given a field of operation within constitutionally imposed limitations"); Almon v. Morgan County, 245 Ala. at 246, 16 So.2d at 516 ("It is the duty of the court to construe a statute so as to make it harmonize with the constitution if this can be done without doing violence to the terms of the statute and the ordinary canons of construction.").
The principles regarding severance of constitutional and unconstitutional applications of legislative enactments that I apply to this case are well established in federal *197 jurisprudence. As one commentator explained in 1937, "the Supreme Court, the state courts, and secondary authorities all appear to agree that the invalidity of part of a law or of some of its applications will not affect the remainder (1) if the valid provisions or applications are capable of being given legal effect standing alone, and (2) if the legislature would have intended them to stand with the invalid provisions stricken out." Robert L. Stern, "Separability and Separability Clauses in the Supreme Court," 51 Harv. L.Rev. 76 (1937) (emphasis added). Dating even further back, in the first edition of Judge Cooley's well known treatise on Constitutional Limitations, published in 1868, the author states at pages 180-81:
"A legislative act may be entirely valid as to some classes of cases, and clearly void as to others.... In any such case, the unconstitutional law must operate as far as it can, and it will not be held invalid on the objection of a party whose interests are not affected by it in a manner which the constitution forbids. If there are any exceptions to this rule, they must be of cases only where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others."
Thus, in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the United States Supreme Court limited the application of the language of the Longshoremen's and Harbor Workers' Compensation Act authorizing administrative officers to make conclusive findings of fact on "all questions" so as to exclude the authority to make findings on jurisdictional questions. The Court concluded that a savings clause very similar to one found in Alabama's Code (see discussion, infra) manifested a legislative intention that such a saving construction be adopted. 285 U.S. at 62, 52 S.Ct. 285. See also, e.g., United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."); Yazoo & Mississippi Valley R.R. v. Jackson Vinegar Co., 226 U.S. 217, 33 S.Ct. 40, 57 L.Ed. 193 (1912) (overly broad statute may be upheld as applied to a given case, despite its potential unconstitutionality as applied in other circumstances).
The question now presented, therefore, is whether, with the statutory presumption in favor of grandparent visitation having been stricken as unconstitutional, the Legislature would have intended that the remainder of the statute be applied to the limit of those constitutional standards we have identified herein, rather than be stricken altogether. Based on my reading of § 30-3-4.1, in its entirety, as well as my review of the history of various enactments by our Legislature attempting to provide some form of grandparent-visitation rights, I conclude that the Legislature would have intended that this particular enactment be applied to the fullest extent permitted by the constitution.[12] My conclusion in this regard is bolstered by the severability clause included in the Act adopting § 30-3-4.1. See Act No. 99-436, 1999 Ala. Acts. *198 See also § 30-3-4.1(d)(6) (providing that courts must consider "other relevant factors in the particular circumstances" in deciding whether grandparent visitation is in the child's best interest).
Even more importantly, in Title One, Chapter One, of the 1975 Code of Alabama, entitled "Construction of Code and Statutes," our Legislature stated, in part:
"If any provision of this Code ... or the application thereof to any person, thing, or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the ... applications of this Code ... that can be given effect without the invalid provisions or application ..., and to this end, the provisions of this Code and such amendments and statutes are declared to be severable."
Ala.Code 1975, § 1-1-16 (emphasis added). Clearly, this statute expresses our Legislature's intent regarding the general power and, indeed, the duty of the judiciary to sever constitutional applications of statutes from those applications that are not constitutional, and thereby save the former.[13] In Crowell v. Benson, the United States Supreme Court relied upon a very similar severability clause, providing that "if the application of any provision of this Act to any person or circumstance is held invalid, the application of such provision to other persons or circumstances shall not be affected thereby," to limit the application of the Longshoremen's and Harbor Workers' Compensation Act. 285 U.S. at 62, 52 S.Ct. 285. See also State ex rel. Pryor v. Martin, 735 So.2d 1156, 1159 (Ala.1999) ("We regard § 1-1-16 as an expression of legislative intent regarding the general power and duty of the judiciary to sever and save statutory provisions not tainted by the unconstitutionality of other provisions in the same statute." (emphasis added)); In re Marriage of Harris, 112 Cal.Rptr.2d at 138 (limiting application of grandparent-visitation statute to cases showing harm by clear and convincing evidence); In re Herbst, 971 P.2d at 399 (holding that although Oklahoma statute, by its terms, permitted a court to order grandparent visitation merely if the court found it to be "in the best interests of the child," under Oklahoma and United States Constitutions, the statute could not be constitutionally applied to those cases where there is no threshold showing of harm); Stacy v. Ross, 798 So.2d 1275, 1280 (Miss.2001) (viewing Mississippi statute providing for state intervention where parent has "unreasonably denied grandparent visitation" and visitation would be in child's "best interest" as requiring "no less than the Fourteenth Amendment" requires); McGovern v. McGovern, 201 Ariz. 172, 33 P.3d 506, 512 (Ct.App.2001) ("Superimposing [constitutional] safeguards on [Arizona grandparent-visitation statute] is compatible with the statute and alleviates any constitutional concerns in applying it."). Cf. Williams, 256 Va. at 22, 501 S.E.2d at *199 418 (construing statutory provision providing merely that "[t]he court shall give due regard to the primacy of the parent-child relationship" as requiring a threshold showing of harm in order to satisfy constitutional requirements for court-ordered grandparent visitation).
I conclude that § 30-3-4.1, Ala.Code 1975, may be applied to the extent of the constitutional limitations described in this special writing. Of course, even as so limited, the statute must still be applied to the unique facts of each case presented and nevertheless may still be unconstitutionally applied to a specific individual under particular circumstances, unduly infringing upon that person's protected right. See, e.g., Boddie v. Connecticut, 401 U.S. 371, 379-80, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). The constitutionality of any standard for awarding visitation "turns on the specific manner in which that standard is applied." Troxel, 530 U.S. at 73, 120 S.Ct. 2054. While this principle applies to the requirements that there be a threshold showing of substantial harm and that this showing be made by clear and convincing evidence, I again note that visitation should be limited to that type and quantity of visitation reasonably necessary to avoid the specific harm that justifies the court's intervention.
Based upon the foregoing, I conclude that the trial court erred in holding Ala. Code 1975, § 30-3-4.1, unconstitutional per se; however, I would hold that that statute constitutionally may be applied only within the boundaries set forth in this special writing.
YATES, P.J., concurs.
CRAWLEY, Judge, dissenting.
I respectfully dissent. As I have stated in my earlier writings in J.S. v. D.W., [Ms. 2990431, May 4, 2001] ___ So.2d ___, ___ (Ala.Civ.App.2001) (Crawley, J., concurring in the result), and R.S.C. v. J.B.C., 812 So.2d 361, 371 (Ala.Civ.App.2001) (Crawley, J., concurring in the result), I believe that the grandparent-visitation statutes in Ala.Code 1975, §§ 30-3-4.1 and 26-10A-30, are unconstitutional per se.
NOTES
[1] The mother did not completely oppose visitation, but sought more limited visitation than the grandparents had requested; the mother opposed granting the grandparents overnight visitation with the children. Troxel, 530 U.S. at 6, 120 S.Ct. 20541.
[2] The Washington Supreme Court granted the Troxels' petition for review and consolidated their case with two other visitation cases. In re Custody of Smith, 137 Wash.2d 1, 969 P.2d 21 (1998).
[3] The order of the trial court in this case was issued on February 28, 2001, six months before this court issued its opinion in R.S.C. v. J.B.C., on August 31, 2001.
[4] R.S.C. v. J.B.C., 812 So.2d 361, was a plurality opinion. A plurality opinion is an opinion "agreed to by less than the majority as to the reasoning of the decision, but is agreed to by a majority as to the result," Black's Law Dictionary 1092 (6th ed.1990); an opinion that lacks the sufficient number of judges' votes to constitute a majority opinion. Therefore, "[t]he precedential value of the reasoning in a plurality opinion is questionable at best." Ex parte Discount Foods, Inc., 789 So.2d 842, 845 (Ala.2001); see also Ex parte Achenbach, 783 So.2d 4 (Ala.2000). Judge Murdock authored the main opinion in R.S.C., and Judge Pittman concurred in that opinion. Presiding Judge Yates, Judge Crawley, and Judge Thompson concurred in the result. Three judges agreed as to some parts of the opinion in R.S.C. For example, in her special writing, Presiding Judge Yates stated that she concurred in that part of the main opinion that held the rebuttable presumption unconstitutional. However, there was no clear agreement of a majority of this court regarding the necessity of finding substantial harm in order to apply Alabama's grandparent-visitation statute in a constitutional manner.
[5] Four judges agree in this case that if it can be shown by clear and convincing evidence that prohibiting grandparent visitation would cause substantial harm to the child then Alabama's grandparent-visitation statute could be constitutionally applied. However, a majority of this court does not agree that the showing of substantial harm is the only situation in which that statute can be constitutionally applied.
[6] In Wisconsin v. Yoder, 406 U.S. 205, 233-34, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the United States Supreme Court explained that the "power of the parent ... may be subject to the limitation ... if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens."
[7] A basic presumption undergirded the Troxel court's decision: a fit parent acts in the best interests of his or her child. As the Troxel court explained:

"The [grandparents] did not allege, and no court has found, that [the mother] was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children....
"`. . . .'
"Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."
Troxel, 530 U.S. at 68-69, 120 S.Ct. 2054 (quoting Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); internal quotation marks and citations omitted). Nor was there any allegation in Troxel that the parent had forfeited custody. The Supreme Court explained the problem with Washington's statute to be the fact that it allowed Washington courts to "disregard and overturn any decision by a fit custodial parent concerning visitation ... based solely on the judge's determination of the child's best interests." Troxel, 530 U.S. at 67, 120 S.Ct. 2054 (some emphasis added).
Quoting Ex parte Mathews, 428 So.2d 58 (Ala.1983), our Supreme Court in Ex parte Terry explained the nature of the presumption in favor of a parent as follows:
"So strong is this presumption [in favor of a natural parent's custody of his or her child], absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question."
494 So.2d 628, 632 (Ala.1986)(emphasis added; quoting Ex parte Mathews, 428 So.2d at 59, citing in turn Ex parte Sullivan, 407 So.2d 559 (Ala.1981)).
Elsewhere in its opinion in Ex parte Terry, our Supreme Court explained that its earlier decision in Ex parte McLendon, 455 So.2d 863 (Ala.1984), enumerated two conditions under which the custody presumption in favor of a parent would not be applicable, one of which was a voluntary forfeiture of custody. Ex parte Terry, 494 So.2d at 632. As the Court said in McLendon:
"A natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a non-parent."
455 So.2d at 865.
[8] In Borsdorf v. Mills, 49 Ala.App. 658, 275 So.2d 338 (1973), this court affirmed a trial court's judgment awarding custody of a child to foster parents over the objection of his natural mother. The child had been removed from the custody of his mother at an age of less than two years and was "taken into a home [the foster parents'] and given the same comfort, love and affection over a period of two and a half years which was given to the natural children in the home." 49 Ala.App. at 661, 275 So.2d at 341. This court explained that to remove the child "from the only home and parents he knows and send him to an uncertain future in a distant state with strangers, even though one be a natural parent, could not avoid being [a] traumatic experience which could be calculated to be extremely damaging." Id.

"[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays `in promot[ing] a way of life' through the instruction of children as well as from the fact of blood relationship."
Lehr v. Robertson, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). See also Rideout v. Riendeau, 761 A.2d 291 (Me.2000) (upholding finding that grandparents had acted as children's parents for significant periods of time, and holding that a statute requiring a sufficient existing relationship between grandparents and children in order for grandparents to petition for visitation served a compelling state interest and was narrowly tailored to serve that interest).
[9] In R.S.C., I raised the possibility that the right of parental control over questions of supervised visitation with grandparents might not receive the same degree of constitutional protection as the right of parental control over unsupervised visitation. R.S.C., 812 So.2d at 370 n. 5 and accompanying text. Arguably, however, the right to control the associations of one's child is fundamental, whether the issue is one of supervised or unsupervised visitation, but in some cases the use of supervised visitation may be a solution that least interferes with that fundamental right while adequately preventing the harm or potential harm that would occur if no grandparent visitation whatsoever were allowed. See generally Commonwealth ex rel. Zaffarano v. Genaro, 500 Pa. 256, 455 A.2d 1180 (1983). See also R.S.C., 812 So.2d at 369 n. 4 (summarizing the three potential grandparent visitation arrangements described in Genaro, including "visitation" in the presence of the child's custodian). Cf. Graville v. Dodge, 195 Ariz. 119, 126-27, 985 P.2d 604, 610, 612 (Ct.App.1999) (upholding grandparent-visitation statute, in part, based on the fact that "the statute is structured to enable the court to make grandparent visitation a minimal burden on the rights of the child's parents"; "if the court decides to grant visitation, the order must be as minimally intrusive as possible").
[10] On January 3, 2002, the California Supreme Court granted review in In re Marriage of Harris, 115 Cal.Rptr.2d 191, 37 P.3d 379 (2002), and, accordingly, the decision of the Court of Appeal is no longer authority in that state's courts, see California Rules of Court, Rules 976, 977, and 979. Nevertheless, I find the opinion of the court to be a convenient synthesis of several principles common to both Alabama and California law, and cite it for that purpose only.
[11] In addition to the constitutional applications discussed in the text, I note that there are at least two other circumstances under which the statute may be constitutionally applied. Section 30-3-4.1(b)(1) contemplates application of the statute to a situation where both parents of the child are deceased. Obviously, under such a circumstance, the child would be left with no custodial parent whatsoever, much less a fit custodial parent. Likewise, the abandonment of a child by its parent, as referenced in [section] (b)(3) of the statute, may leave the child without a custodial parent. However, in the main, the statute addresses situations where there is a fit custodial parent; it is those situations that are the focus of the textual discussion.
[12] I do not derive a required showing of "substantial harm" from a construction of § 30-3-4.1's "best-interest" standard. Instead, the requirement that there be a showing of such harm is, in my view, a constitutionally required limitation. I simply conclude that the Legislature would have intended that the statute be applied to the fullest extent permitted by that limitation, rather than not at all.
[13] While concerns regarding separation of powers inevitably enter into the calculus as to the proper treatment of a legislative enactment not constitutional in all its applications, such concerns may as well be implicated where the court is inclined to strike the enactment in its entirety as where consideration is given to upholding its application only to the extent permitted by constitutional standards. The obligation of courts vis-a-vis the Legislature is to give effect to the expressed will of the latter to the extent the constitution allows. See, e.g., Regan v. Time, Inc., 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (plurality opinion) ("[A] court should refrain from invalidating more of the statute than is necessary."); El Paso & N.E. Ry. v. Gutierrez, 215 U.S. 87, 96, 30 S.Ct. 21, 54 L.Ed. 106 (1909) ("whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of [a] court to so declare, and to maintain the act in so far as it is valid").