Angela Steed ("the mother") appeals from a divorce judgment of the trial court awarding custody of the parties' son and daughter to Ronnie Steed ("the father").
The father sued the mother for a divorce and for custody of the son and daughter on August 27, 2002. The mother filed her answer and a counterclaim for divorce. The trial court entered a temporary order in which it gave the father custody of the children and ordered the mother to pay child support. The trial court received ore tenus evidence and the parties stipulated as to the division of marital property with the exception of the division of the father's retirement account.
On January 28, 2003, the trial court entered its final judgment divorcing the parties and awarding them joint custody of the children, with the father having primary physical custody. The trial court awarded the mother standard visitation and ordered the mother to pay $375 per month in child support. The trial court found that the mother was not entitled to a portion of the father's retirement account. The mother appealed.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is plainly and palpably wrong. Scholl v.Parsons, 655 So.2d 1060 (Ala.Civ.App. 1995). "The presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor." Littleton v. Littleton, 741 So.2d 1083, 1085
(Ala.Civ.App. 1999). In addition, when the trial court's judgment does not contain specific findings of fact, this court must assume that the trial court made those findings of fact necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996). This court is not permitted to reweigh the evidence on appeal and to substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141
(Ala.Civ.App. 2000); see also Ex parte Perkins, 646 So.2d 46 (Ala. 1994).
The mother and the father were married on March 25, 1994. At the time of the parties' marriage, the daughter was two years old. The daughter was born of a previous relationship of the mother's. The father legally adopted the daughter when she was two years old, and he treated the daughter as his biological child. Neither party told the daughter that she was *Page 604 
adopted. The daughter used the father's last name. In October 1997, the mother gave birth to the son. At the time of trial, the daughter was 10 years old and the son was 5 years old.
Both parties worked full-time during the marriage. At the time of the trial, the father was employed at Louisiana Pacific. The mother had worked at SpectraCare until January 2002, when she went to work in a dental office. The mother went back to work at SpectraCare in September 2002, during the pendency of the divorce proceeding. Evidence in the record indicated that both parents took an active role in raising the children. The mother admitted that she had engaged in at least one extramarital affair during the parties' marriage.
In her brief on appeal, the mother argues that the trial court erred by awarding custody of the children to the father because, she argues, there was insufficient evidence to support a finding that placing the children with the father was in the children's best interests. The determination of an award of child custody is within the sound discretion of the trial court. Pierce v. Helka, 634 So.2d 1031, 1032 (Ala.Civ.App. 1994). A trial court's custody determination following the presentation of ore tenus evidence is presumed correct, and that judgment will not be set aside on appeal absent a finding that the trial court abused its discretion or that its determination is so unsupported by the evidence as to be plainly and palpably wrong. Pierce v. Helka, supra.
When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the "best interest of the child" standard will generally apply. Nye v. Nye,785 So.2d 1147 (Ala.Civ.App. 2000); see also Ex parte Byars, 794 So.2d 345
(Ala. 2001). In making an initial award of custody based on the best interests of the children, a trial court may consider factors such as the "`characteristics of those seeking custody, including age, character, stability, mental and physical health . . . [and] the interpersonal relationship between each child and each parent.'" Graham v. Graham,640 So.2d 963, 964 (Ala.Civ.App. 1994) (quoting Ex parte Devine,398 So.2d 686, 696-97 (Ala. 1981)). The adulterous conduct of a parent is one factor the trial court may consider in making an award of custody; however, a parent will not be denied custody for every act of indiscretion. Murphree v. Murphree, 579 So.2d 634 (Ala.Civ.App. 1991). Other factors the trial court may consider in making a custody determination include "the sex and age of the [children], as well as each parent's ability to provide for the [children's] educational, emotional, material, moral, and social needs." Tims v. Tims, 519 So.2d 558, 559
(Ala.Civ.App. 1987). The overall focus of the trial court's decision is the best interests and welfare of the children.
The parties do not dispute that the mother engaged in an adulterous affair. While the trial court did not state its particular reasons for holding that it was in the best interests of the children to place them in the physical custody of their father, it was proper for the court to consider the evidence of the mother's adulterous affair.
The mother testified that the father was a good and fit parent. The father testified that he often fed and bathed the children and put them to bed. The father testified that the mother went out at night five to six times per week with friends. The mother denied those allegations.
The father testified that he suffered from epilepsy. The mother testified that the father's epilepsy could place the children in harm's way. However, the mother *Page 605 
admitted that there had never been an incident where the father had had a seizure and hurt a child. The mother also admitted that she suffered from medical problems. The mother testified that she takes medication for depression and that she has had "sharp, radiating pain from the neck — from the shoulder all the way down to the hand."
There was ample evidence in the record from which the trial court could have found that the children's best interests would be served by awarding the father physical custody of them. Although the trial court did not indicate what factors it used to award physical custody of the children to the father, this court will assume that the trial court made those findings of fact necessary to support its custody judgment. See Ex parteBryowsky, supra.
We further note that the record reveals that the trial court conducted an in camera interview with the daughter in this case, but a transcript of that interview is not before us on appeal. This court held in Ezellv. Hammond:
 "'Alabama has long recognized that judges may conduct in camera interviews with minor children, who are the subject of divorce custody proceedings,' provided that the parties have consented thereto. Anonymous v. Anonymous, 353 So.2d 515, 517 (Ala. 1977). If neither party requests that a transcript be made of the interview, however, the record on appeal of such case is incomplete, and therefore, an affirmance is mandated by the rule stated in Eaton v. Shene, 282 Ala. 429, 430, 212 So.2d 596, 598 (1968) ('[W]here there was evidence before the trial court and not before [the appellate court], which may have influenced [the trial court] at arriving at the conclusion it reached, we cannot disturb that finding'). Accord, Johnson v. Johnson, 395 So.2d 1043
(Ala.Civ.App. 1981)."
Ezell v. Hammond, 447 So.2d 766, 768-69 (Ala.Civ.App. 1984). Given the evidence presented to the trial court and the record before us on appeal, we cannot say that the trial court erred in awarding physical custody of the children to the father.
The mother also argues that this court should consider the fact that she is the daughter's biological mother in determining child custody. The mother specifically contends that Alabama caselaw gives preference to "blood relation," and, therefore, she argues, her biological tie to the daughter warrants preferential treatment. Section 26-10A-29(a), Ala. Code 1975, provides that an adopted child "shall be treated as the natural child of the adopting parent . . . and shall have all rights and be subject to all of the duties arising from that relation." In Douglas v.Harrelson, 454 So.2d 984, 986 (Ala.Civ.App. 1984), this court held:
 "In Alabama adoption is a status created by the state acting as parens patriae, the sovereign parent. Ex parte Bronstein, 434 So.2d 780 (Ala. 1983). The policy of the adoption statute is to treat adopted children in all respects as natural children. Ex parte Bronstein, supra. One of the rights vested in the adoptive parents is the right to custody. Jones v. Jones, 215 Kan. 102, 523 P.2d 743, cert. denied, 419 U.S. 1032, 95 S.Ct. 515, 42 L.Ed.2d 307 (1974).
 "The presumption is strong that a child's best interests lie with its natural parents, and the authority of the parents will not be interfered with except for gross misconduct or where the parents lack the capacity or the means to properly care for the child. Ex parte Sullivan, 407 So.2d 559 (Ala. 1981). Where the dispute over a child's custody arises between the natural parents and a third person, the superior claim is with the parents, and that custody will not be disturbed unless it plainly appears that a *Page 606 
custody change is required. 407 So.2d 563, supra.
 "Since adoptive parents stand in the shoes of natural parents so far as custody of a child is concerned, the above propositions apply as well to adoptive parents."
Thus, the father stands on equal footing with the mother because he legally adopted the daughter. Therefore, we cannot say that the trial court abused its discretion in treating the adoptive father like a natural parent in making its custody determination.
The mother next argues that the trial court erred by failing to award her a portion of the father's retirement account. In its divorce judgment, the trial court held that the mother had no claim to the father's retirement benefits. Section 30-2-51(b) provides:
 "(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
 "(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
 "(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
 "(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
(Emphasis added.)
In Smith v. Smith, 836 So.2d 893 (Ala.Civ.App. 2002), this court held that Section 30-2-51, Ala. Code 1975, only applied to parties that had been married over 10 years. This court stated:
 "The husband argues that because he and the wife had not been married for 10 years at the time the divorce action was filed, it was error for the trial court to award any of his retirement benefits to the wife. We agree. Although § 30-2-51 is not a model of legislative clarity, we conclude that it requires that the parties must have been married for at least 10 years on the date the action for divorce is filed."
Smith, 836 So.2d at 899.
The mother and the father had not been married for 10 years at the time the father filed the complaint for divorce in August 2002. At that time, the parties had been married for only eight years. Thus, the trial court lacked the discretion to award the mother a portion of the father's retirement benefits pursuant to § 30-2-51, Ala. Code 1975.
The mother argues that the trial court erred in awarding the father $375 per month in child support when the mother was required to pay only $358 per month pursuant to the Uniform Child Support Guidelines.
 "[T]his court has consistently held that the application of Rule 32[, Ala.R.Jud.Admin.,] is mandatory in child-support actions filed on or after October 9, 1989. A trial court may deviate from the child-support guidelines in determining a child-support amount; however, any deviation is improper if it is not justified in writing. . . .
"'. . . .'
 "Compliance with Rule 32(E) is mandatory, even though the trial court may find that the application of the guidelines would be unjust or inequitable. When the court determines that application *Page 607 
of the guidelines would be manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala.R.Jud.Admin. When Rule 32(E) has not been complied with and child support is made an issue on appeal, this court may reverse the judgment of the trial court and remand the case for further proceedings in compliance with Rule 32."
Thomas v. Norman, 766 So.2d 857, 859 (Ala.Civ.App. 2000) (citations omitted).
The record indicates that the parties filed the appropriate CS-41 and CS-42 forms pursuant to Rule 32, Ala.R.Jud.Admin. Both parties testified at trial that the child-support obligation was properly set at $358 per month in the trial court's temporary order. The father and the mother both assert on appeal that the trial court incorrectly determined the mother's child-support obligation. The child-support-guidelines forms supplied by the parties before trial support their contention an appeal. The trial court's judgment failed to indicate a reason for a deviation from the guidelines. Therefore, we reverse the judgment of the trial court insofar as it establishes child support at $375 per month, and we remand this cause to the trial court for it to determine an appropriate child-support award consistent with the Uniform Child Support Guidelines or, in the alternative, to enter findings justifying a deviation from those guidelines.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.