MOORE, Judge.
R.Z. (“the father”) appeals from a judgment of the Montgomery Circuit Court (“the circuit court”) to the extent that it declined to consolidate this case with a pending juvenile case, made a determination regarding the pending juvenile case, and awarded custody of C.W. to S.W. (“the mother”).

Procedural History

The parties were never married and have two children together, T.W. and C.W. The father was awarded custody of T.W. in 2002. On July 8, 2011, the father filed, in *1101 case number CS-02-237.02, a petition to modify the mother’s child-support obligation for T.W. The father also objected to a hearing before a referee and requested that the case be heard before a circuit judge. The father further alleged that a custody case concerning C.W. was pending in the juvenile court, case number JU-11-541.01, and requested that the cases be heard together. On October 27, 2011, the circuit court entered an order denying the father’s request to consolidate case number CS-02-237.02 with case number JU-11-541.01. On January 23, 2012, the circuit court entered an order “clos[ing] out” case number CS-02-237.02 “due to lack of jurisdiction of the Child Support Division” and consolidating that action with another action, which had been assigned case number DR-11-708.
On January 30, 2012, the mother filed in case numbers DR-11-708 and CS-02-237.02 a counterpetition for determinations as to paternity, custody, and support with regard to C.W. and a counterpetition for a modification of custody with regard to T.W.
On May 30, 2012, a trial was held, and, on December 12, 2012, the circuit court entered a judgment adjudicating the father to be the father of C.W., awarding the parties joint legal custody of C.W., awarding the mother sole physical custody of C.W., stating that the father’s petition in case number JU-11-541.01 was moot, denying the mother’s petition to modify custody of T.W., awarding the parties specific visitation, and ordering the father to pay child support.
On January 18, 2013, the father filed his notice of appeal to this court.

Discussion

On appeal, the father argues that the circuit court erred by declining to consolidate this case with case number JU-11-541.01, by making a determination regarding case number JU-11-541.01, and by awarding custody of C.W. to the mother.

I.

With regard to the father’s arguments concerning this case’s relationship to case number JU-11-541.01, we note that the father initially filed his petition to modify child support in case number CS-02-237.02. That case was considered to be a juvenile matter. See, e.g., R.P.M. v. P.D.A., 112 So.3d 49, 51 (Ala.Civ.App.2012) (quoting C.W.S. v. C.M.P., 99 So.3d 864, 866 n. 1 (Ala.Civ.App.2012)) (“ ‘[A] case designated with a “CS” case number is considered a juvenile-court action, whether it is filed in a juvenile court or in a circuit court.’ ”). At the time the father filed his petition, July 8, 2011, the state of the law was that juvenile courts did not retain jurisdiction over a child to modify custody or support unless that child had previously been found dependent.[1] See, e.g., Ex parte T.C., 63 So.3d 627, 630 (Ala.Civ.App.2010) (“ ‘[A] juvenile court’s retained jurisdiction [is limited] to cases in which “a child has been adjudicated dependent, delin[q]uent, or in need of supervision.” ’ ”) (quoting W.B.G.M. v. P.S.T., 999 So.2d 971, 975 (Ala.Civ.App.2008) (Pittman, J., concurring specially), quoting in turn Ala.Code 1975, § 12-15-117(a)). There is no indication that the initial child-custody and support order was entered in the context of a dependency proceeding. Thus, the juvenile court did not acquire jurisdiction over the father’s petition to modify, and the case was properly transferred to the cir *1102 cuit court. Therefore, case number JU-11-000541.01, a juvenile matter, which the father indicates in his brief was filed as a dependency case, could not be consolidated with case number DR-11-708. We agree with the father, though, that the circuit court lacked jurisdiction to make any order with regard to case number JU-11-541.01. Thus, we reverse the circuit court’s judgment to the extent that it adjudicated the father’s petition filed in case number JU-11-541.01. See, e.g., T.B. v. T.H., 30 So.3d 429, 433 (Ala.Civ.App.2009) (“Although cloaked with the authority to act as a circuit-court judge, that authority did not enable the judge to enlarge the jurisdiction of the juvenile court and rule on matters outside that court’s jurisdiction.”).

II.

The father next argues that the circuit court erred in awarding sole physical custody of C.W. to the mother.
“When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the ‘best interest of the child’ standard will generally apply. Nye v. Nye, 785 So.2d 1147 (Ala.Civ.App.2000); see also Ex parte Byars, 794 So.2d 345 (Ala.2001). In making an initial award of custody based on the best interests of the children, a trial court may consider factors such as the “‘characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.” ’ Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App.1994) (quoting Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981)).... Other factors the trial court may consider in making a custody determination include ‘the sex and age of the [children], as well as each parent’s ability to provide for the [children’s] educational, emotional, material, moral, and social needs.’ Tims v. Tims, 519 So.2d 558, 559 (Ala.Civ.App.1987). The overall focus of the trial court’s decision is the best interests and welfare of the children.”
Steed v. Steed, 877 So.2d 602, 604 (Ala.Civ.App.2003).
In the present case, the evidence indicated that C.W. was eight years old and had lived with the mother for the three years preceding the trial. Before that, C.W. had lived with the mother and the father in the same home. There was evidence indicating that the mother had allowed C.W. to play outside in the mobile-home park with a group of children with no adults present, that a group of children C.W. was a part of had broken some of the neighbors’ vehicle windows, that C.W. slept in the bed with the mother, and that the mother and her six children lived in a mobile home with only three bedrooms. The mother testified, however, that she had rented that mobile home in a rush after the father had kicked her and her children out of the home they had been living in and that she planned to obtain a larger home when her lease expired the month following the trial. There was also evidence indicating that C.W. had gotten suspended from riding the school bus for one day. The mother testified that that had been the result of C.W.’s playing at the bus stop with a toy gun that the father had purchased for him.
The father testified that C.W. and other children have come to his house and asked for food and that he had enrolled C.W. and the mother’s other children in the YMCA. The father also testified that C.W. would have his own room at his house. He testified that his shift changes at work and that his shift at the time of the trial required him to leave for work at 5:15 p.m. and get home at 5 a.m. He testified that T.W. stays *1103 with a relative on the nights he is working. The mother, on the other hand, leaves for work at 5:35 a.m. and gets home around 3:15 p.m. The mother’s 18-year-old son, D.W., testified that he and the mother’s other children walk to the bus stop together. He testified that his bus comes before C.W.’s bus arrives and that C.W. waits with the other children for his bus. D.W. testified that there is food in the mother’s home and that the mother takes good care of the children. The mother testified that she allows C.W. to visit the father when he asks to do so but that C.W. rarely spends the night there. She testified that the father has prevented her from visiting with T.W. Several of the members of the mother’s church testified that the mother and her children are involved in church, that the mother is a good parent, and that C.W. is well-behaved.
Based on the foregoing, the circuit court could have concluded that, although C.W. had had some isolated discipline issues, it was in his best interest to continue living with the mother, with whom he had lived his entire life. There was more than sufficient evidence indicating that the mother was a good parent to C.W. Considering all the applicable factors, we cannot conclude that the circuit exceeded its discretion in awarding the mother custody of C.W., and we therefore affirm the juvenile court’s judgment to the extent that it awarded the mother custody of C.W.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. Effective May 14, 2012, juvenile courts retain jurisdiction in "[proceedings to establish, modify, or enforce support, visitation, or custody when a juvenile court previously has established parentage.” Ala.Code 1975, § 12-15-115(7).