Rel: April 4, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2023-0427

_____

## Michael James Russell

## v.

## Jennifer Senn Russell

## Appeal from Shelby Circuit Court
## (DR-19-900526)

HANSON, Judge.

Michael James Russell ("the husband") appeals from a judgment entered by the Shelby Circuit Court ("the trial court") divorcing him from Jennifer Senn Russell ("the wife"). For the reasons set forth herein, we affirm the trial court's judgment insofar as it awarded custody of and

visitation with C.R. and R.R. ("the children"); and we reverse the trial court's judgment insofar as it divides the marital property and awards alimony, life insurance for the benefit of the wife, a guardian ad litem fee, and an attorney fee.

On August 28, 2019, the wife filed a complaint seeking a divorce from the husband, sole physical custody of the children, child support, an alimony award, an equitable division of the marital property and debts, and an attorney-fee award. The trial court entered an order, pursuant to an agreement between the parties, that awarded the wife pendente lite custody of the children, subject to the husband's liberal visitation and support. On June 23, 2020, the husband filed an answer and a counterclaim, seeking a divorce from the wife; sole physical custody of the children; child support; an equitable division of the marital property, debts, and children's expenses; and an attorney-fee award. The trial court appointed a guardian ad litem to represent the children.

The trial court conducted the final hearing over several days. The final hearing began on February 24, 2021, and continued February 23, 2022. During the February 23, 2022, portion of the final hearing, after the wife testified that, due to her limited finances she sought an attorney-

fee award, the wife's counsel asked the trial court whether evidence regarding the amount of the wife's attorney fee should be presented "at the close of the case or by affidavit or testimony." The trial court responded that evidence of the amount of the attorney fee could be submitted by an affidavit. The husband did not object. After the wife rested her case, the husband testified and rested his case. The trial court granted the parties an opportunity to file "proposed orders," stated that it would review the evidence and issue a final judgment, and then adjourned the final hearing.

On February 25, 2022, the wife's counsel submitted an affidavit that reflected that the wife had incurred an attorney fee in the amount of $79,149.06. On March 1, 2022, the wife filed a document, entitled "[the wife's] 'ask' for final judgment of divorce." On March 17, 2022, the husband filed the following documents: an "affidavit in opposition to the wife's request for an attorney-fee award," "[the husband's] opposition to attorney fees outline and timeline," "[the husband's] exhibits content page," "supplement to [the husband's] motion to deny attorney's fees exhibits," 28 exhibits, "[the husband's] motion to enter order," and "[the

husband's] affidavit and brief in support of proposed final judgment of divorce" with exhibits.

After months had passed and it had not entered a final judgment, the trial court, in January 2023, decided to reopen the evidence to allow the parties to present new supplemental evidence that had developed between February 23, 2022, and January 2023. The trial court allowed the parties to present new supplemental evidence on January 6, 2023, and January 23, 2023.

At the beginning of the January 6, 2023, portion of the final hearing, the trial court indicated that it had struck the documents filed by the husband on March 17, 2022. The trial court stated that the documents contained evidence that could have been but had not been presented before the husband had rested his case on the February 23, 2022. At the beginning of the January 23, 2023, hearing, the trial court reminded the parties that it would not admit into evidence any emails that were dated before February 23, 2022, stating: "I'm just here for day two, listening to supplemental evidence [after] February [2022]."

The parties presented the following evidence at the final hearing. The wife testified that she and the husband had married in March 2007

4

and that the children had been born in November 2007. According to the wife, before the parties married, the husband purchased a condominium in Birmingham, at which they resided before their marriage and for a few months thereafter. During their marriage, the parties purchased a house in Acworth, Georgia, a lake house in Talladega, and a town house in Birmingham. Additionally, they purchased a 2018 Grand Design Solitude Fifth Wheel recreational vehicle ("RV"), various vehicles, recreational vehicles, two Conex storage containers, and personal property. While the case was pending, the parties agreed to sell the Acworth house and the RV and to use the proceeds from those sales to pay past-due taxes.

The wife testified that before the parties married, she had worked at a Dreamland BBQ restaurant but during the marriage she had only worked sporadically so that she could raise the children and be home when they were not in school. The wife testified that she was currently a full-time employee at Uniti Fiber, earning approximately $60,000. According to the wife, she did not own a retirement account.

Evidence was presented indicating that during the marriage, the husband had been employed by several different companies and his

5

employers had required him to travel constantly. At the time of the final hearing, he was employed at Wanzek, earning a base salary of $285,000, plus a bonus. The husband testified that, at the time the wife filed the divorce complaint, he owned a 401(k) account that contained $114,054.94 and a B.L. Harbert Holdings Member's Interest Account that contained $178,068.

The parties testified that the husband had been the financial provider for the family. From his income, the parties purchased real property and vehicles. According to the wife, she made purchases for the family with jointly owned credit cards, the balance of which the husband paid, and with funds from a joint bank account in which the husband placed funds each month.

Evidence was presented indicating that the parties love the children. According to the wife, since the birth of the children, she had been their primary caregiver. The husband agreed that, when the children were young, the wife had been the primary caregiver and that he had cared for the children when his work schedule allowed. The parties testified that the wife had homeschooled the children and had taken the children on a year long educational travel adventure across the

United States. The husband had joined them at various places across the country when his work allowed. Subsequently, the children had been enrolled in public school and one of the children required additional after-school assistance with his education.

The parties, the children, and Peter Boyle, the family's counselor, testified about the parties' parenting and their numerous disputes over the children's custody. Considerable evidence was presented indicating that the children's relationship with each parent at various times had been strained. For example, evidence was presented indicating that at least once during each parties' custody of the children, one of the children had runaway to the noncustodial parent's house.[1] Testimony was also presented about numerous conflicts over custody time and each party's inability to follow the pendente lite order with respect to visitation. Evidence was also presented indicating that while this action was pending, the wife, at the request of either the husband or the children, had allowed the children to visit with the husband more than the time allotted in the pendente lite order. The husband testified that his current employer permitted him to schedule his business travel and that he

---

[1]The parties' residences were a few miles apart.

avoided traveling when he had custody of the children. He admitted, however, that on some of his custodial Thursdays, when his business travel prevented him from retrieving the children from school, the paternal grandmother retrieved the children and cared for them until he returned home from his business travel that evening. He denied leaving the children with the paternal grandmother overnight while he was traveling for business.

Evidence was also presented about the parties' numerous disputes over the children's education and healthcare. Concerning the children's education, evidence was presented indicating that initially the wife had spent more time assisting the children with their homework but, during the pendency of this action, the husband had increased his educational assistance to the children. The husband also presented evidence indicating that the children's behaviors and academic performance had declined. Regarding the children's healthcare, evidence was presented indicating that the parties argued over the children's medical needs and that the husband, after changing employers, had refused to provide the wife with the children's health-insurance cards. The husband testified

that the wife seldom informed him about the children's medical appointments and health issues.

The parties testified that the pending divorce and their disputes over the children's custody and care had negatively impacted the children and had caused anger and frustration for them and the children. Because of the children's reaction to the parties' seeking a divorce and the parties' disputes over the children, the parties and the children participated in counseling. Throughout the litigation, Boyle and the guardian ad litem played active roles in assisting the parents in navigating the children's care. Boyle testified that he had conducted approximately three or four sessions with the parties. He explained that those sessions focused on

> "coparenting, trying to improve their communications with one another, trying to improve their ability to compromise with one another as it pertains to the best interest of [the children], trying to educate them as to how their conduct impacts [the children] and makes [the children] feel like they are in the middle of the divorce issues."

When asked if the parties' ability to coparent had improved, Boyle responded that he had witnessed glimmers of hope and that he believed that their ability to coparent would improve with the finalization of the divorce and a custody determination.

9

Both parties testified about their inability to communicate and discussed how their discord had impacted the children. The parties agreed that they needed to improve their communication and that the husband had suggested that they communicate through Our Family Wizard. The husband admitted, however, that he had not accessed the program. The husband and the wife agreed that the children should not have contact with the wife's former paramour and the trial court commented on the record that this prohibition would be included in its final judgment.

At the January 6, 2023, hearing, the children testified in camera that their lives remained difficult because of their parents' tumultuous relationship. Evidence was also presented indicating that the parties' visitation disputes, children's medical disputes, and support issues continued. The husband presented evidence indicating that he had made additional modifications to his business travel schedule to allow him more time to care for the children.

On February 15, 2023, the trial court entered its final judgment of divorce. The trial court divorced the parties based on the ground of incompatibility, divided the parties' marital property, ordered the

husband to maintain until February 28, 2028, a life insurance policy in the amount of $250,000, with the wife named as the beneficiary, awarded the wife $2,500 per month for "her maintenance and support" for 10 years, awarded the wife an attorney fee in the amount of $25,000, and ordered the husband to pay a guardian ad litem fee in the amount of $20,000. The trial court awarded the parties joint legal custody of the children, awarded the wife sole physical custody of the children[2] and the husband visitation with the children, awarded the husband primary decision-making regarding the children's education and extracurricular activities, and awarded the wife primary decision making regarding the

_____

[2]In its judgment, the trial court awarded the wife "primary custody" of the children.  In L.B. v. V.T.W., 387 So. 3d 1157, 1158 n.1 (Ala. Civ. App. 2023), we explained:

> "An award of 'primary physical custody' of a child is, under Alabama law, actually an award of sole physical custody, as that term is defined in § 30-3-151(5), Ala. Code 1975. S.J.H. v. N.T.S., 301 So. 3d 843, 847 n.4 (Ala. Civ. App. 2020); Whitehead v. Whitehead, 214 So. 3d 367, 371 (Ala. Civ. App. 2016).  Section 30-3-151(5) defines the term 'sole physical custody' as a situation in which '[o]ne parent has sole physical custody and the other parent has rights of visitation except as otherwise provided by the court.'"

11

children's religion, civic, cultural, and medical decisions. Regarding its custody award, the trial court specifically provided:

> "The custodial/visitation periods … are intended by the court to be the <u>minimum</u> to which each parent is entitled. The parties are encouraged to extend such periods, …, as the children grow older, and as may be in the best interest of said children, and to reschedule, by mutual agreement, any custodial/visitation period which is inconvenient for the parties or interferes with the children's extra-curricular activities, with both parties keeping in mind the best interest of the children."

(Emphasis in original.) The trial court awarded the wife $1,500 per month in child support. The trial court recognized that this award was not in accord with the child-support guidelines in Rule 32, Ala. R. Jud. Admin., noting that the combined adjusted gross incomes of the parties exceeded the highest level of the schedule of basic child-support obligations in Rule 32 and that each party would provide for the children during their custodial periods. After the denial of the parties' postjudgment motions by operation of law, the husband filed a timely notice of appeal.

> "'We begin by noting the appropriate standard of review in divorce proceedings. Trial judges enjoy broad discretion in divorce cases, and their decisions are to be overturned on appeal only when they are 'unsupported by the evidence or [are] otherwise palpably wrong.'" <u>Ex parte Bland</u>,

12

796 So. 2d 340, 344 (Ala. 2000)(quoting Ex parte Jackson, 567 So. 2d 867, 868 (Ala. 1990)). Also, when, as in this case, a trial court's judgment is based on ore tenus evidence, the judgment is presumed correct. Kennedy v. Kennedy, 743 So. 2d 487 (Ala. Civ. App. 1999). The presumption of correctness under the ore tenus rule "is based on the trial court's unique position to observe the witnesses and to assess their demeanor and credibility." Glazner v. Glazner, 807 So. 2d 555, 559 (Ala. Civ. App. 2001); Hall v. Mazzone, 486 So. 2d 408, 410 (Ala. 1986).

"….

"Williams v. Williams, 905 So. 2d 820, 826-27 (Ala. Civ. App. 2004)."

Damrich v. Damrich, 178 So. 3d 872, 875-76 (Ala. Civ. App. 2014).

The husband challenges several of the trial court's evidentiary and procedural decisions.

"[B]oth this court and our supreme court have previously explained that a trial court's judgment should be '"based on evidence produced in open court lest the guarantee of due process be infringed."' Ex parte R.D.N., 918 So. 2d 100, 104 (Ala. 2005)(quoting Ex parte Berryhill, 410 So. 2d 416, 418 (Ala. 1982)); see also Rogers [v. Rogers], 307 So. 3d [578,] 588 & 592 [(Ala. Civ. App. 2019)](quoting R.D.N. and Berryhill, respectively); Rule 43(a), Ala. R. Civ. P. ('In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided in these rules.')."

W.M. v. B.J.B., 343 So. 3d 527, 530 (Ala. Civ. App. 2021).

First, the husband contends that the trial court exceeded its discretion by striking the documents he filed on March 17, 2022, in

13

opposition to the wife's evidence in support of her claim for an attorney-fee award.

> "Trial judges are vested with broad discretion in determining courtroom procedure 'as long as the exercise of that discretion does not result in the denial of the defendant's basic constitutional right.' Hyde v. State, 778 So. 2d 199, 236 (Ala. Crim. App. 1998); see also Ephraim v. State, 627 So. 2d 1102, 1105 (Ala. Crim. App. 1993).
>
>> "'"A court exceeds its discretion when its ruling is based on an erroneous conclusion of law or when it has acted arbitrarily without employing conscientious judgment, has exceeded the bounds of reason in view of all circumstances, or has so far ignored recognized principles of law or practice as to cause substantial injustice. Hale v. Larry Latham Auctioneers, Inc., 607 So. 2d 154, 155 (Ala. 1992); Dowdy v. Gilbert Eng'g Co., 372 So. 2d 11, 13 (Ala. 1979)."'
>
> "Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama, 991 So. 2d 701, 705 (Ala. 2008) (quoting Edwards v. Allied Home Mortgage Capital Corp., 962 So. 2d 194, 213 (Ala. 2007))."

Ex parte Malone, 12 So. 3d 60, 62-63 (Ala. 2008).

From our review of the record, we cannot agree that the trial court exceeded its discretion by striking the husband's documents opposing the wife's request for an attorney fee. The record reflects that during the February 23, 2022, portion of the final hearing, the wife testified that, due to her limited financial circumstances, she could not afford to pay her

14

attorney fee. When asked how to present evidence of the amount of the attorney fee, the trial court in open court indicated that the wife could submit an affidavit setting forth the amount of the attorney fee that she had incurred. The husband did not object to the trial court's decision to accept evidence of the amount of the wife's attorney fee by affidavit. At the final hearing, the husband did not present any evidence to dispute the wife's claim that she could not afford to pay her attorney fee. After the final hearing had concluded, the wife, on February 25, 2022, submitted an affidavit listing the services provided by her attorney and the associated fee. The husband then, on March 17, 2022, filed documents opposing an award of an attorney fee for the wife. Rather than addressing the amount of the wife's attorney fee, the husband objected to an attorney-fee award in general, challenging the wife's ability to pay an attorney fee and providing evidence supporting his argument that, considering the wife's conduct and his expenditure of substantial sums for the wife's benefit during the pendency of the litigation, an attorney-fee award was improper. The documents filed on March 17, 2022, contained evidence that either could have been discovered or was known to the husband before February 23, 2022, but

15

he chose not to present it before the close of the evidence on February 23, 2022. Because the husband had an opportunity to present evidence concerning the wife's ability to pay an attorney fee in open court and the evidence in the submitted post-hearing documents was known to the husband before the evidence closed but the husband chose not to present it, we cannot conclude that the trial court exceeded its discretion by striking the documents. Cf. Ex parte Harris, 216 So. 3d 1201, 1207 (Ala. 2016)("Whether to strike an affidavit is a decision left to the sound discretion of the trial court."). Cf. Mersmann v. Mersmann, 449 So. 2d 241, 241-242 (Ala. Civ. App. 1984)(holding that the trial court did not exceed its discretion by refusing to consider evidence regarding attorney fee after party had indicated that it had no additional evidence, and the trial court had adjourned the hearing).

Likewise, we cannot conclude that the trial court exceeded its discretion by striking the husband's brief and affidavit in support of a proposed final judgment. At the conclusion of the February 23, 2022, portion of the final hearing, the trial court stated that the parties could submit "proposed orders" of divorce. The husband submitted a "motion to enter order" and "[the husband's] affidavit and brief in support of

16

proposed final judgment of divorce" with exhibits. As with his filings in opposition of an attorney-fee award for the wife, these documents contained evidence dated before the hearing on February 23, 2022, that was not presented in open court and arguments not made at either the February 24, 2021, or February 23, 2022, hearing. Because the husband had an opportunity to present the evidence contained in the documents at the final hearing but chose not to do so and because the submissions did not comply with the trial court's directive to submit "proposed orders," the husband cannot demonstrate that the trial court exceeded its discretion by striking the husband's brief and affidavit. See Carden v. State, 621 So. 2d 342, 346 (Ala. Crim. App. 1992); McCray v. State, 88 So. 3d 1, 75 (Ala. Crim. App. 2010)(providing that "[a] trial court is vested with discretion in the conduct of a trial, and appellate courts will not interfere with the exercise of that discretion unless it clearly appears that there has been an abuse of discretion.").

Lastly, the husband argues that the trial court exceeded its discretion by limiting the evidence presented during the January 6 and 23, 2023, hearings to evidence developed after February 23, 2022.

"Although a trial court may reopen a case when it appears to be necessary to due administration of justice, the decision whether to reopen rests within the sound discretion of the trial court. <u>Hancock v. City of Montgomery</u>, 428 So. 2d 29 (Ala. 1983)." <u>Mersmann</u>, 449 So. 2d at 241-42. See also <u>Russell v. Russell</u>, 610 So. 2d 391, 392 (Ala. Civ. App. 1992)("Whether to reopen a case to allow additional evidence is a determination that also rests within the discretion of the trial court.")

The record reflects that both parties rested on February 23, 2022, and that the trial court closed the evidence and stated that after considering the evidence presented, it would issue a final judgment. By resting, the parties indicated that they had concluded their presentation of evidence in support of their claims and in defense of the claims made against them. The record also reflects that in January 2023, because it had not entered a timely final judgment, the trial court determined that, for the administration of justice, it would reopen the evidence and allow the parties to present "supplemental [evidence developed] from February 2022 to the present."

We cannot agree with the husband's argument that the trial court arbitrarily limited the time for him to present his case. Significantly, the

husband rested his case on February 23, 2022. Due to the passage of almost a year without the entry of a final judgment, the trial court exercised its discretion by allowing the parties an opportunity to present new evidence that had developed since February 2022 to demonstrate the situation and circumstances of the parties and the children. Nothing in the record supports the husband's argument that the trial court was impatient with the parties, frustrated with the length of the proceedings, or denied the admission of new evidence developed after the February 23, 2022, hearing. Instead, the trial court recognized that, because it had not entered a timely final judgment, the administration of justice required, and it was in the best interest of the children to allow, the parties to present evidence developed since the close of the evidence in February 2022 that would be relevant to its determinations. Considering the discretion afforded to a trial court in conducting final hearings and that in child-custody matters the trial court's paramount concern is the best interest of the children, we cannot conclude that the trial court exceeded its discretion by limiting the presentation of the evidence to new evidence developed after the close of the February 2022 hearing. See Russell, supra; Fowler v. Fowler, 280 Ala. 305, 306-07, 193 So. 2d 748,

750 (1966)(providing that in a divorce action, a trial court's paramount consideration when custody of the children is an issue is reaching a determination that is in the best interests and welfare of the children involved). Cf. Rayford v. Rayford, 390 So. 2d 636 (Ala. Civ. App. 1980)(holding that the trial court did not exceed its discretion at postjudgment hearing by not permitting additional testimony offered to support evidence of claim previously heard at original trial).

Next, the husband contends that the trial court exceeded its discretion by awarding the wife sole physical custody of the children and awarding him visitation with the children.[3] According to the husband, ample evidence was presented to support the conclusion that an award of joint physical custody of the children would serve the best interest of the children.

> "'"When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the

---

[3]The husband does not challenge on appeal the propriety of the child-support award. "Arguments not raised in the appellant's initial brief are deemed waived …." Meigs v. Estate of Mobley, 134 So. 3d 878, 889 n.6 (Ala. Civ. App. 2013). See also Gary v. Crouch, 923 So. 2d 1130, 1136 (Ala. Civ. App. 2005) ("[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.").

best position to make a custody determination -- it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So. 2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So. 2d 410, 412 (Ala. Civ. App. 1993), set out the well-established rule:

> "'"'"Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So. 2d 440 (Ala. Civ. App. 1989), and Vail v. Vail, 532 So. 2d 639 (Ala. Civ. App. 1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So. 2d 1343 (Ala. Civ. App. 1990); Flowers v. Flowers, 479 So. 2d 1257 (Ala. Civ. App. 1985)."'"

"'Ex parte Bryowsky, 676 So. 2d 1322, 1324 (Ala. 1996). We also note that, "[w]hen a trial court does not make specific findings of fact concerning an issue, an appellate court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly

erroneous." <u>McGough v. McGough</u>, 710 So. 2d 452, 453 (Ala. Civ. App. 1997)(citing <u>Ex parte Bryowsky</u>, 676 So. 2d at 1324). "[T]he resolution of conflicting evidence is within the exclusive province of the trial court ...." <u>Hedgemon v. United Parcel Serv., Inc.</u>, 832 So. 2d 656, 659 (Ala. Civ. App. 2002).

"'"'When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the "best interest of the child" standard will generally apply. <u>Nye v. Nye</u>, 785 So. 2d 1147 (Ala. Civ. App. 2000); see also <u>Ex parte Byars</u>, 794 So. 2d 345 (Ala. 2001). In making an initial award of custody based on the best interests of the children, a trial court may consider factors such as the "'characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.'" <u>Graham v. Graham</u>, 640 So. 2d 963, 964 (Ala. Civ. App. 1994) (quoting <u>Ex parte Devine</u>, 398 So. 2d 686, 696-97 (Ala. 1981)) .... Other factors the trial court may consider in

making a custody determination include "the sex and age of the [children], as well as each parent's ability to provide for the [children's] educational, emotional, material, moral, and social needs." Tims v. Tims, 519 So. 2d 558, 559 (Ala. Civ. App. 1987). The overall focus of the trial court's decision is the best interests and welfare of the children.'

"'"Steed v. Steed, 877 So. 2d 602, 604 (Ala. Civ. App. 2003).

"'"Furthermore, when evidence is presented ore tenus, the trial court is '"unique[ly] position[ed] to directly observe the witnesses and to assess their demeanor and credibility."' Ex parte T.V., 971 So. 2d 1, 4 (Ala. 2007) (quoting Ex parte Fann, 810 So. 2d 631, 633 (Ala. 2001)). Therefore, a presumption of correctness attaches to a trial court's factual findings premised on ore tenus evidence. Ex parte J.E., 1 So. 3d 1002, 1008 (Ala. 2008)."

"'Bedard v. Bedard, 266 So. 3d 1113, 1123-24 (Ala. Civ. App. 2018).'

"Treadway v. Treadway, 324 So. 3d 842, 848-49 (Ala. Civ. App. 2020)."

Burkett v. Burkett, 367 So. 3d 409, 420-21 (Ala. Civ. App. 2022).

23

A review of the record supports the trial court's award of sole physical custody of the children to the wife subject to the husband's visitation. Evidence was presented indicating that the parties love the children but disagreed as to how to best parent the children. The parties agreed that the wife had been the primary caregiver for the children before the parties separated. Conflicting evidence was presented as to each party's parenting before and after the parties separated. Although evidence was presented indicating that each of the parties had engaged in erratic parenting behavior after the parties had separated, no testimony was presented indicating that either party had harmed a child or that either party was concerned that the other party would harm a child in the future. The record, however, contains ample evidence from which the trial court could have inferred that, even though the husband had adjusted his work schedule to accommodate the needs of the children, the best interest of the children would be served by awarding the wife sole physical custody of the children. Additionally, evidence was presented from which the trial court could infer that the difficulties the wife had confronted in parenting the children after the parties' separation were a consequence of the parties' separation and their

24

inability to communicate and not reflective of the wife's parenting skills. Thus, sufficient evidence was presented from which the trial court could have inferred that the best interests of the children would be served by awarding the wife sole physical custody of the children subject to the husband's visitation. To the extent that the evidence was in conflict, it was the duty of the trial court, not this court, to resolve conflicts in the evidence. Burkett, supra. We also recognize that the children testified in this case, and we are mindful that "[w]hile not dispositive, the preference of a child with regard to ... custody is entitled to much weight." Brown v. Brown, 602 So. 2d 429, 431 (Ala. Civ. App. 1992). We, however, cannot reweigh the evidence, Burkett, supra, although this court might have reached a different determination. Chunn v. Chunn, 183 So. 3d 985, 993 (Ala. Civ. App. 2015). Accordingly, the trial court's custody award is affirmed.

The husband also contends that the trial court's judgment must be reversed because the trial court in its final judgment did not make express findings for the alimony award as required in § 30-2-57, Ala. Code 1975.[4] In Merrick v. Merrick, 352 So. 3d 770 (Ala. Civ. App. 2021),

_____

[4]Section 30-2-57, provides, in pertinent part:

"(a) Upon granting a divorce or legal separation, the court shall award either rehabilitative or periodic alimony as provided in subsection (b), if the court expressly finds all of the following:

"(1) A party lacks a separate estate or his or her separate estate is insufficient to enable the party to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage.

"(2) The other party has the ability to supply those means without undue economic hardship.

"(3) The circumstances of the case make it equitable.

"(b) If a party has met the requirements of subsection (a), the court shall award alimony in the following priority:

"(1) Unless the court expressly finds that rehabilitative alimony is not feasible, the court shall award rehabilitative alimony to the party for a limited duration, not to exceed five years, absent extraordinary circumstances, of an amount to enable the party to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage.

"(2) In cases in which the court expressly finds that rehabilitation is not feasible, a good-faith attempt at rehabilitation fails, or good-faith rehabilitation only enables the party to partially acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage, the court shall

26

and its progeny, this court reversed judgments awarding periodic alimony or rehabilitative alimony on the basis that the findings required under § 30-2-57 had not been made by trial courts. The wife concedes that the trial court's judgment does not contain the express findings required by § 30-2-57 to award alimony and, therefore, that portion of the trial court's judgment is subject to reversal. We agree. Because the trial court, in its final judgment, awarded the wife periodic alimony within the scope of § 30-2-57 but did not make the findings of fact as required by § 30-2-57, we reverse that portion of the judgment, and we remand the

---

award the party periodic installments of alimony for a duration and an amount to allow the party to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage as provided in subsection (g).

"(c) In cases in which a party has proven a lack of means to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage, but there exists a present inability of the other party to supply those means, a court, when the circumstances of the case make it equitable, shall reserve jurisdiction to award rehabilitative or periodic alimony. If there is neither an award of alimony nor a reservation of jurisdiction at the time of the divorce, the court shall permanently lose jurisdiction to subsequently make an award of rehabilitative or periodic alimony."

27

cause for entry of a new judgment of divorce in compliance with <u>Merrick</u> and its progeny interpreting and applying § 30-2-57.

Because we reverse the alimony award in its entirety and because the consideration of property division is intertwined with an award of alimony, we also reverse the trial court's property-division awards so that the trial court may consider the awards together. <u>J.D.A. v. A.B.A.</u>, 142 So. 3d 603, 619-20 (Ala. Civ. App. 2013), overruled on other grounds by <u>Bittick v. Bittick</u>, 297 So. 3d 397 (Ala. Civ. App. 2019). Additionally, the reversal of the alimony and property division awards makes the financial circumstances of the parties undetermined; therefore, we reverse the guardian ad litem fee award and the attorney-fee award for further consideration on remand. See <u>Frazier v. Curry</u>, 104 So. 3d 220, 228 (Ala. Civ. App. 2012).

We observe that the husband, in his argument that the trial court exceeded its discretion by ordering him to maintain a life insurance policy naming the wife as a beneficiary, fails to recognize that "a trial court has discretion to award life insurance as a separate award for the benefit of the wife, [but] it cannot order the payor spouse to maintain a life-insurance policy to secure a periodic-alimony obligation." <u>Turney v.</u>

Turney, 381 So. 3d 429, 453 (Ala. Civ. App. 2022)(citations omitted). The language in the final judgment does not indicate that the trial court's award of life insurance for the benefit of the wife was to secure the husband's alimony obligation. Therefore, we cannot agree that the trial court exceeded its discretion by requiring the husband to maintain a life-insurance policy for the benefit of the wife. However, because the parties' financial circumstances are undetermined, we also reverse that award for further consideration.

Finally, the husband contends that the trial court exceeded its discretion by failing to include in the final judgment a provision prohibiting the wife from allowing her paramour to have contact with the children. On remand, we remind the trial court that it has authority to correct this omission and any other omissions or clerical errors it deems material, relevant, and necessary. See Rule 60(a), Ala. R. Civ. P. (authorizing a trial court on its own initiative to correct omissions and mistakes in judgments arising from oversight); Weaver v. Weaver, 4 So. 3d 1171, 1175 (Ala. Civ. App. 2008).

In conclusion, we affirm the trial court's judgment insofar as it awards custody of and visitation with the children; we reverse the

judgment insofar as it divides the marital property and awards alimony, life insurance for the benefit of the wife, a guardian ad litem fee, and an attorney fee; and we remand this case for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Edwards and Fridy, JJ., concur.

Lewis, J., concurs in the result, without opinion.